**DUBOIS et al. v. HOUSE et al. (No. 8930.)**

Court of Civil Appeals of Texas. Galveston.
March 25, 1927.

Rehearing Denied April 21, 1927.

**Wills ☞531(3)—Under bequest dividing share of residue share and share alike among nephews, niece, and children of another niece, children took per stirpes.**

In view of will as a whole and of other bequests in which testatrix used the term "each" instead of "share and share alike" as directing individual or per capita distribution, under bequest dividing one share of residue share and share alike among three nephews and a niece and children of another niece, the children *held* to take per stirpes.

Appeal from District Court, Galveston County; J. C. Canty, Judge.

Action between Mrs. Eula Dubois and others and W. C. House and others. From a judgment for the latter, the former appeal. Affirmed.

Eskridge & Williams, of San Antonio, and J. R. Garnand, of Jourdanton, for appellants.

Williams, Neethe & Williams, of Galveston, for appellees.

GRAVES, J. Mrs. English, by a long holographic will dated 18 days before her death, disposed of a large estate to many relatives —near and remote—of herself and deceased husband, diverting only a few gifts to friends and charities first, thus making altogether 101 special bequests; she then di-

rected the disposition of the entire residue in this concluding provision:

"Then I desire that the remaining of my estate be divided in five parts or shares, one share to be divided among the children of my deceased brother, J. L. House, share and share alike, and one share to my brother S. C. House and his wife Katy if they be deceased then I devise that the share be divided among his children, and the three children of his deceased son Frank, children named Sade, Gillum, Jasper and Toliver W. House to share their deceased father's part, all share and share alike. One share to my brother W. C. House and his children, if W. C. House be deceased then I desire his share to be divided among his children share and share alike. One share to be divided among my deceased sister's two sons O. M. Allen and J. M. Allen and the children of L. T. Allen, he being dead, children named Douglas Allen, Gilbert Allen, Maggie and Milton Allen, O. M. and J. M. Allen to share their part with their children. One share to be divided among these persons I name, share and share alike, C. L. House, J. V. House, children of Mrs. Ida Tansey, Mrs. Laura House Persons, John E. House."

There follow some instructions to her executors, and, after the testatrix's signature, specific desires and directions concerning her household and personal effects are appended, addressed to her nephew, C. L. House.

The sole objective of and issue in the suit is the construction of the last-quoted sentence, with a view of determining how much of the share it deals with Mrs. Tansey's children should take, to wit:

"One share to be divided among these persons I name, share and share alike, C. L. House, J. V. House, children of Mrs. Ida Tansey, Mrs. Laura House Persons, John E. House."

There are five of these children, and Mrs. Tansey herself, Mrs. Laura Persons, and the three Houses, all thus named, are the nieces and nephews, respectively, of Mrs. English.

Stated in another and perhaps the simplest way, the single question raised is, Should Mrs. Tansey's children, as to this one residuary share, take per stirpes or per capita? If the former, they would as a group get one-fifth of it; if the latter, one-ninth each, or altogether five-ninths, the remainder in either instance going in equal portions each to Mrs. Persons and the three nephews.

The trial court held to the per stirpes construction and adjudged the interests accordingly.

After a careful consideration of the able briefs and arguments presented, this court, not without some misgivings as to its correctness, has concluded to confirm that view of the matter, mainly upon these considerations:

As before indicated, the will, as drawn by its author, is in effect separated into two distinct parts or sections, the first embracing the special bequests, the second and fully quoted one the disposition of all that is left; in this residuary section, for the first and——except as to her personal effects in the appendix—only time in the long document, written entirely by her own hand, Mrs. English made a per stirpes distribution and qualified it by the phrase "share and share alike," when she left "one share to my brother S. C. House and his wife Katy; if they be deceased then I devise that the share be divided among his children, and the three children of his deceased son Frank, children named Sade, Gillum, Jasper and Toliver W. House to share their deceased father's part, all share and share alike," thereby expressly providing that the three children of Frank House, deceased, should, in substitution for their father, together take only his part of that share, and as such group, not as individuals, divide the whole of it in equal portions with whatever number there might be of the living children of S. C. and Katy House. She therefore, in that connection, used the time-worn expression in the nomenclature of matters testamentary, "share and share alike," as referable to a class or group, rather than to individuals only, and such employment of it neither does violence to prose composition nor precedents of court construction. Schouler on Wills, par. 539, page 547; King v. Savage, 121 Mass. 303; Lyon v. Acker, 33 Conn. 222; Risk's Appeal, 52 Pa. 271, 91 Am. Dec. 156.

Why, then, should it be deemed a thing unthinkable that, in this relatively brief residuary section, she intended by the same expression to at once follow this first one of that character with a like distribution per stirpes of another share of her remaining estate?

If not from looking to this division alone, the question seems to be answered by a comparison of the context here with other portions of the will.

When she had finished with the large number of special bequests where various individual differences were indulged in, and came to make short shift of the residue, it seems plain that, as to it, the dominating thought in Mrs. English's mind was of her nephews and nieces as such and of their children only as standing in their stead; she divided it into five general parts, one of them each to go to the children of her three mentioned brothers, the fourth to the children of a sister—along with several other Allens—all these four classes of beneficiaries being nephews and nieces except these additional Allens, and the fifth one, that here involved, to go to three nephews and one niece, all specially named, and the unnamed children of a second niece, who is herself likewise so named. Thus each of those *named* in connection with this share bore the relationship of either nephew or niece to her, and in the absence of any indi-

cation anywhere in the will that she intended to discriminate against them in favor of Mrs. Tansey's children, it is an easy and natural inference that, having referred to the latter as a group or class, she meant them to take only as such, in substitution for their mother—also a niece; she did not name these children, give the number of them, nor otherwise indicate that any of them were to receive a separate and exclusive interest; if it had been her purpose to give them more than half, or five-ninths, of the share in question and only the remaining four-ninths to the three nephews and the niece, it seems improbable that she would have referred to them merely as "children of Mrs. Ida Tansey," but would have made that intention plain by specifically naming them and their several interests, or using other language unmistakably conveying that meaning. She not only demonstrated her understanding of how to do, but in fact did, this very thing in reference to them in the other division of the will above mentioned, for she there made them another bequest in these words, "To the five children of Mrs. Walter Tansey, I give to each one $250.00," thus giving the number of the children and directing that *each one* should receive a like and stipulated amount.

In making others of her special bequests, also, indeed, in most of them, she used the term "each one" instead of "share and share alike" in directing an individual or per capita distribution, for instance, in these two particular ones:

"To the four children of my brother, W. C. House and his deceased wife Annie, children named J. V., Laura, Mae and James, I give fifteen hundred dollars to each one. * * *

"To the children of my deceased brother J. L. House I desire that one hundred dollars be paid to each one a year."

It is true that Mrs. Tansey was alive when this instrument was so executed; nevertheless, construing it from its four corners in the light of these contrary indications, it seems to us that, even though the inference from the fact that beneficiaries are designated by their relationship to a then living ancestor ordinarily is that they take per capita rather than per stirpes, as is first stated in Schouler on Wills, paragraph 540, page 548, this succeeding declaration in the same paragraph of that text must be the rule here:

"But this construction bends readily as in other cases to indications in the wills of a contrary purpose, if such be the fairer conclusion from the whole context. And the instances where the presumption has thus given way are very many. As in the mode of appropriating income, or a failing share before the capital fund is to be distributed. Or by force of such words as 'heirs' or 'respectively.' Or where the gift to children, nephews, etc., is merely substitutional, as in the case of a bequest not collectively to A. and B. 'and their children,' but to A. and B. 'or their children.' Or where 'children of A.' as a class are named with other individual beneficiaries" (citing Ferrer v. Pyne, 81 N. Y. 281; Vincent v. Newhouse, 83 N. Y. 505; Burnet's Ex'rs v. Burnet, 30 N. J. Eq. 595).

If, however, the considerations thus adverted to do not compel the conclusion that Mrs. English clearly intended that these grandnephews and nieces merely step up and receive of this share the portion that would have gone to their mother, had she herself only been designated along with and in like manner as the other niece and three nephews, they do unmistakably so trend against the imputation of an intended per capita distribution between them and their uncles and aunt as to make doubtful and uncertain what she did mean by the language used, thereby, under well-recognized authority, permitting a recourse to our statutes of descent and distribution for a safe canon of interpretation. Paul v. Ball, 31 Tex. 10; Lyon v. Acker, 33 Conn. 222; New York Life Ins. Co. v. Winthrop, 237 N. Y. 93, 142 N. E. 431, 31 A. L. R. 791; Dallander v. Dahmers, 297 Ill. 274, 130 N. E. 705, 16 A. L. R. 8; Dunihue v. Hurd, 50 Tex. Civ. App. 360, 109 S. W. 1145.

In the Paul Case first cited, our Supreme Court at an early day adopted that rule in this expression:

"Recurring, then, in this branch of the investigation, to the governing and controlling object to be sought after in the interpretation of wills—the intention of the testator—if that intention is not clearly made manifest by the language of the will itself, it would be a sound canon of interpretation, in our judgment, to give it that construction which would put it most in harmony with our system of jurisprudence and with the statutes of distributions and of wills, which the testator himself would naturally enough expect to be done, if his language should prove so vague and indeterminate as to require construction. If he should fail to be explicit in the language of his will, he would naturally suppose that the vagueness would be elucidated in the light of the statute of descent and distribution and of the statute of wills."

Were our statute on the subject (R. S. art. 2577, p. 681), adopted as the standard, the distribution to these children would be per stirpes.

The facts aliunde the will itself furnish little, if any, aid in the required interpretation. As has just been stated, Mrs. Tansey was living when the testatrix so made her will and died at Galveston, but she and her children had been living in a distant county in Texas, and were not on intimate terms with Mrs. English; neither were any of the others named in this litigated provision, except C. L. and John E. House, who had both sustained friendly and intimate relations with her, those of the former being the closer and more confidential.

The effect of these circumstances, other than as furnishing no ground for a discriminatory purpose in favor of Mrs. Tansey's children, seems negative.

Further discussion being deemed unnecessary, an affirmance has been ordered.

Affirmed.