(No. 17854.—)

HAZEL CARLIN *et al.* Appellees, *vs.* HARRY B. HELM *et al.* Appellants.

*Opinion filed June 23, 1928—Rehearing denied October 5, 1928.*

JOHN W. WILLIAMS, for appellants.

O'HARRA, O'HARRA & O'HARRA, for appellees.

Mr. COMMISSIONER CROW reported this opinion:

A bill in equity was filed in the circuit court of Hancock county by appellees seeking a construction of the will of James D. Helm, who died February 26, 1904, and for partition of the real estate devised. A decree was rendered by the circuit court construing the will differently from that contended for by defendants to the bill and awarding partition in accordance with the interests passing by the will as construed by the circuit court. To reverse the decree they bring the record here by appeal.

The material averments of the bill are: The testator left surviving him Martha, his widow, Aura F. Hecox, his daughter, and Harry B. Helm, his grandson. On June 23, 1900, the will was executed, and on March 23, 1904, it was admitted to probate. The second and third paragraphs read as follows:

"Second, I give and bequeath to my lawful heirs, all my property after my wife's death to be divided equally between them, except one thousand dollars to be given to Leon J Pearce, my nephew. as stated below.

"Third, I give and bequeath my nephew Leon J. Pearce, the sum of one thousand dollars to be paid him out of my estate after my wife's death, as mentioned above. If he should not be living at that time or any child of his this shall revert to the estate and be divided as above. In regard to article second, I mean by my lawful heirs, my daughter Aura F. Hecox and her children, and grandson Harry B. Helm."

The bill further avers that at the death of the testator, his daughter, Aura F. Hecox, had two children, Hazel Carlin and Rufus C. Hecox, the complainants; that Harry B. Helm has no child; that at the time of his death the testator was the owner in fee of the real estate described in the will; that by virtue of the second and third paragraphs of the will the real estate described in the first paragraph was

devised, one-fourth to Mrs. Hecox, one-fourth to Harry B. Helm, one-fourth to Hazel Carlin and one-fourth to Rufus C. Hecox, and that said real estate is now owned one-fourth each by the four persons named, disencumbered of the life estate; that it is claimed by Mrs. Hecox and Harry B. Helm that they are the owners, each, of an undivided one-half interest in the real estate and that complainants have no interest in or title to any part thereof; that the claim is unfounded and not true in fact on a proper construction of the will. Other averments show the contention of the different parties as to the interests passing by the will. The bill further avers that complainants are entitled to have the premises set off in severalty, one-fourth to Mrs. Hecox, one-fourth to Harry B. Helm, one-fourth to Hazel Carlin and one-fourth to Rufus C. Hecox, or if the court should on a construction of the will find and determine that the real estate is not owned in such proportions, that it be partitioned in accordance with the interests of the parties therein as may be found and determined by the court.

Defendants Harry B. Helm and his wife by their answers denied the construction placed upon the will by the bill. They admitted that Mrs. Hecox, the daughter of the testator, had two children, Hazel Carlin and Rufus C. Hecox, and deny that the construction of the will contended for by the complainants is the proper construction. They averred the proper construction of the will to be, that Harry B. Helm is entitled to one-half of the premises described in fee simple and that the other half must be construed to belong to Mrs. Hecox, Hazel Carlin and Rufus C. Hecox, each having such portion and part thereof as shall be just and proper and according to the true intent and meaning of the will, but as to the other half not owned by Harry B. Helm he is not interested, except that he desires a true and proper construction to be given thereto, to the end that all of the parties may have their full and complete rights therein. The answer denied that Hazel Carlin and Rufus C.

Hecox, or either of them, have any right, title or interest in the land, and averred that a proper construction of the will is that Harry B. Helm has an undivided one-half interest in the land and that Mrs. Hecox has an undivided one-half interest therein.

The cause was referred to the master in chancery to report the evidence with his findings and conclusions. He made his report of evidence taken, and concluded as to the interests of the parties that Helm is entitled to an undivided one-third, Mrs. Hecox to an undivided one-third, and Hazel Carlin and Rufus Hecox each to an undivided one-sixth. On exceptions to the findings of the master the chancellor found and decreed that each was entitled to a one-fourth interest by the terms of the will.

Counsel for appellants contends that there are only three possible constructions of the will as it affects Harry B. Helm: (1) He takes a one-half part; (2) he takes a one-third part; (3) he takes a one-fourth part. The construction contended for as the proper construction is that he takes one-half of the real estate.

In this case a construction of the will is a necessary incident to partition. In the construction of a will the purpose is to ascertain the intention of the testator from the language he has used in it. (*McCormick* v. *Sanford,* 318 Ill. 544; *Hollenbaugh* v. *Smith,* 296 id. 558; *Crabtree* v. *Dwyer,* 257 id. 101; *Karsten* v. *Karsten,* 254 id. 480.) The intention to be ascertained is that which the testator has expressed in the language of the will, and not one he may be supposed to have had in his mind but which he has not expressed, (*Pontius* v. *Conrad,* 317 Ill. 241,) and where there is no ambiguity in the terms used, the instrument itself is the only criterion of the testator's intention. *McCormick* v. *Sanford, supra; Crabtree* v. *Dwyer, supra.*

Having by the first paragraph given to his wife his farm for her life, with power to manage and control it, the testator gave her all farm stock, farming tools and all farm

products thereon, with the furniture, pictures, books, wearing apparel and all money on hand and due in notes or otherwise, with the express provision that the devise should "be received by her in place of dower without appraisal." It is true, as appellants say, that dower is not appraised, but the plain intention of the testator was that the widow should take the personal propety described, without regard to its value as ascertained by appraisers, in lieu of dower, which is an interest in land. What is said by counsel is for the purpose of re-enforcing the contention that the will was so loosely drawn that it manifests a legal misconception of the disposition of the property by the ignorant or unqualified scrivener. The second paragraph of the will is said by counsel to be clear. It gave to the "lawful heirs" of the testator all of his property after his wife's death, to be equally divided between them, except $1000 to be given to Leon Pearce, a nephew of the testator. The second paragraph was not intended to stand alone as the expression of the testator's intention. It was actually intended by him to be read with the third. The original will has been certified to this court and has been carefully examined. It is said to have been written by a justice of the peace, and the inference seems to be, therefore, it must be read and understood differently from what it would be understood if written by a more competent person. It was executed by the testator and is his adopted language. In the absence of proof it cannot be assumed, and it is not contended, that something was written as part of the will that the testator did not dictate. That language is deemed to have expressed his intention. If it indicates the individuals that he intended should have his property after his death it is sufficient.

By the second paragraph of the will the testator bequeathed all of his property after his wife's death to his "lawful heirs," to be divided equally between them. If nothing further had been written in the will the real estate would pass to those who were the testator's lawful heirs

at his death as defined by the Statute of Descent. He left as right heirs a daughter, Aura F. Hecox, and Harry B. Helm, a grandson. Therefore, if the last sentence of the third paragraph of the will had not been written, Helm and Mrs. Hecox would answer the legal description of the devisees as lawful heirs.

The second paragraph is the dispositive paragraph of the will. The third is an explanation of the testator's intention as to those who were in his mind that should take under the second. Lest there should be a misapprehension as to those intended by the testator to take as "lawful heirs" he defined the members of the class. He limited its application to his daughter, her children and his grandson. The will is characterized by conciseness. There is no diffuseness of language or overlapping of disposition of property that requires disentanglement. The principal fault alleged against it is that it undertakes to do what the testator can not legally do. It is contended that the substantive gift is "to my lawful heirs;" that no other devise was made of the remainder in the farm and no other person or persons were given anything. It is further contended that no suggestion is found that the gift made in the second paragraph was to be cut down by the alleged vague and ambiguous language in the third paragraph. It is a fundamental rule that all paragraphs and clauses of a will must be construed together as integral parts of the entire will. In doing so every word must be considered unless manifestly meaningless. It is contended that the second and third paragraphs are inconsistent. The third was written for the express purpose of rendering the meaning of the second clear. By the second the testator gave all of his property, after his wife's death, to his lawful heirs, to be divided equally between them. If he had said, "I bequeath all of my property to my lawful heirs as I define lawful heirs, share and share alike," nothing objectionable could be suggested against either the persons who shall take or the interests to

be taken. But he had in mind certain persons standing in a fixed relation to him as those who should have his property. He was not a lawyer, but he knew to whom he wished his bounty extended. By the use of two dozen words he left of record what he intended: "I mean by my lawful heirs, my daughter Aura F. Hecox and her children, and grandson Harry B. Helm." That there might be no misapprehension about the loose language of the second paragraph, he referred in it to the third for his meaning of the words. He thereby applied the canon the courts lay down—to consider all parts of the will. The courts might have given a more restricted meaning in the absence of his explanation.

It is contended further that the language of the third paragraph was intended to exclude someone, and not to include someone who did not fall under the classification of "lawful heirs," and that the children of Aura F. Hecox would not have taken one-fourth each. But if the testator wished to distribute his property so that Harry B. Helm, representing an interest, Mrs. Hecox another and each of her two children another, should take equal shares, there is nothing illegal in the disposition made.

The case of Dollander v. Dhaemers, 297 Ill. 274, is referred to by appellants and extensively quoted as having a bearing on this case. A bill was there filed to construe a will. The question for decision was whether certain devisees took per capita or per stirpes. The second section of the will, after giving the wife of the testator a life estate or so long as she remains a widow, read: "Upon her death or in event of her re-marriage, all my said property shall be vested in my children, Leonie Dhaemers, the children of Mary Duyvetter, deceased, Nellie Cathlyn, Angelina Almose, Charles, Martin, Jacob, Frank and Mandus Dollander, share and share alike." Without quoting extensively from the elaborate and well considered opinion of Mr. Justice Carter, supported by many authorities, it is apparent

that the rule as to distribution *per stirpes* there stated can have no application to this case. All the devisees mentioned or definitely described in the will now under consideration are living. There is no provision in the will in this case that the property of the testator should be divided equally among named children of the testator and the unnamed children of a deceased child, as in that case. All designated devisees are in being. The children of Mrs. Hecox cannot be considered as taking *per stirpes* because they take in their own right directly by the will and not by representation. Nothing in the second and third paragraphs renders possible a construction that they are only to take the interest of their mother, and nothing indicates that the testator intended that the daughter and her two children shall take one-half and Harry Helm the other. Equally untenable is the suggestion that Mrs. Hecox takes a one-sixth and her two children one-sixth each. The two paragraphs considered, it is clear that the testator intended that all should take in equal parts.

The decision of the *Dollander case* turned upon the fact particularly noticed in the opinion, that the testator left seven children and the children of a deceased daughter. It was said as to the grandchildren: "The wording of the second section would seem to indicate that he had his children particularly in mind by this section. The will gives the names of all of his children but does not give the particular names of any of his grandchildren. It simply groups them all together as 'the children of Mary Duyvetter,' and the arrangement of the names of his children, interwoven with the reference to the children of his deceased daughter as a class and without naming them, would indicate that he was thinking of the grandchildren as a class representing the deceased daughter, rather than as individuals who were to receive separate and exclusive shares of his property." And further, on page 278: "When the words 'equally,' 'equal among,' 'share and share alike,' or other similar

words, are used to indicate an equal division among a class, the persons among whom the division is to be made are usually held to take *per capita* unless a contrary intention is discoverable from the will. This would seem to be the fair conclusion drawn from the decisions in this court.— See *Kelley* v. *Vigas*, 112 Ill. 242; *Pitney* v. *Brown*, 44 id. 363; *McCartney* v. *Osburn*, 118 id. 403; *Auger* v. *Tatham*, 191 id. 296; *Welch* v. *Wheelock*, 242 id. 380; *Straw* v. *Barnes*, 250 id. 481."

In *Kelley* v. *Vigas, supra*, there was a devise to the wife for life with gifts over to persons named, "the remainder of my estate to be divided equal among my heirs-at-law." The testator left one daughter and four grandchildren, his only heirs-at-law. The question was, Did they take *per capita* or *per stirpes*? It was held the heirs took the remainder *per stirpes*, one-half to his daughter and to the heirs-at-law of the deceased son the other half. The reason for the conclusion was stated: "It will be observed the devise of the remainder of the estate, after the determination of the life estate first created, is to a class of persons,—that is, to the 'heirs-at-law' of the testator. To ascertain who are included in the class designated as 'heirs-at-law,' reference must be had to the statute of this State regulating descents and distribution of estates. The rule established by the decision of this court in *Richards* v. *Miller*, 62 Ill. 417, is, when the statute is invoked to ascertain the persons who take a devise or bequest by a general description, its provisions as to the quantity each shall take must also be observed. The same doctrine had previously been declared in *Daggett* v. *Slack*, 8 Metc. 450, and in *Tillinghast* v. *Cook*, 9 id. 143."

As concisely stated in *Clark* v. *Todd*, 310 Ill. 361, as a general rule when gifts *simpliciter* are made to heirs, the persons to take and the proportions must be determined by the Statute of Descent. The reason for the rule ceasing, it does not apply. In this case the statute is not referred

to for the purpose of ascertaining the devisees described as heirs. The term was applied to different persons by the testator, two of whom do not answer to the term "heirs" at the common law, in which sense it is employed in the statute. The designation was conventional, made for the purpose, only, of designating those who the testator intended should take under the will. If used generally we would go to the statute to ascertain the nature of their heirship. But the will—not the statute—defines them, and from it we know the devisees: the daughter, Aura F. Hecox; her children, Hazel Carlin and Rufus C. Hecox; and Harry B. Helm, a grandson. There is nothing uncertain or ambiguous as to the devisees.

*Pitney* v. *Brown,* 44 Ill. 363, in its facts is closely analogous to this case. The residue was directed to be equally divided among the children of the testator's brother and his brother-in-law. It was held that the three children of the testator's brother and the brother-in-law took *per capita* and not *per stirpes.*

If the second paragraph of the Helm will stood alone, those answering the description of "lawful heirs" at his death would take, namely, the daughter and the grandson. If the daughter had pre-deceased him, her children would take one-half and Harry B. Helm the other half, because the law attaches that meaning to the term "lawful heirs." But laymen do not always attach that significance to the words. The testator did not use the words in that sense. He says he did not. He says that by the words "my lawful heirs" he meant his daughter, her children and his grandson. A different estate not having been limited, the devisees are tenants in common. (Smith's Stat. 1927, chap. 76, sec. 1.) A conveyance to the mother and her children would create such a tenancy. (*Faloon* v. *Simshauser,* 130 Ill. 649.) That being the testator's meaning, and the daughter and her two children having survived him, they constitute three devisees and Helm another. The children do not

take *per stirpes*. The will directs that after the payment of $1000 to the nephew the property shall be divided equally between them. The contention of appellants would result in an unequal division. The principle underlying the *Dollander case* supports the contention of appellees.

Appellants call attention to the punctuation of the will as in some way affecting its meaning. The second and third paragraphs of the will, punctuated as in the original will, have already been set out in this opinion. The attestation clause, evidently taken from a printed form, is subject to no criticism as to punctuation. It is plain that the punctuation in the second and third paragraphs does not give them a meaning different from that we have placed upon them.

It is argued that the last sentence of the third paragraph shows that in the gift to Aura F. Hecox and her children, and the grandson, Harry B. Helm, the words "and her children" are merely substitutionary, and to have effect only in the event of her death before that of the testator. Substitution is the putting of one person in the place of another, so that he may, in default of ability in the former, or after him, have the benefit of a devise or legacy. Direct substitution is merely the institution of a second legatee in case the first should be either incapable or unwilling to accept the legacy. (Bouvier's Law Dict.) The language of the third paragraph imports addition to or amplification of the second, rather than substitution. It impels to but one conclusion—that Mrs. Hecox and her two children, and Harry B. Helm, were the persons in the mind of the testator as his "lawful heirs" when the will was executed. No one is heir to the living, and the children of the devisor's daughter could not take in her stead unless she had pre-deceased him. Nothing indicates that he had that event in mind. It cannot be read into the will if the language does not require it. If the words "and her children" be read "or her children" the meaning of the testator is as contended for and

the children are to be substituted in the event of the death of their mother. But that is not the question presented. The authorities cited in support of a construction favoring the substitution of "or" for "and" are not applicable here. Courts may construe but are not permitted to make wills.

It is further contended in support of appellants' position, that the real estate was intended to be bequeathed only to Aura F. Hecox and Harry B. Helm, and that the second paragraph, bequeathing all property to "my lawful heirs, * * * to be divided equally *between* them," implies a division involving only two legatees; that if the testator had in mind Mrs. Hecox, her children and Helm, a direction to divide *among* them would have been the proper expression of the intention. That is true, but it is conceded that, as in the case of punctuation, the use of the word "between" is not of itself final and conclusive as to the meaning of the testator. The concession is well made. The entire will evinces the testator's intention to have each of the four persons take an equal part. They are entitled to have it divided in equal parts among them, quantity and quality considered.

It follows that the court committed no error by requiring an accounting of the rents and profits withheld from those out of possession and whose right of possession was wrongfully denied.

The decree of the circuit court is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Crow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*