(No. 19658.—■■■■■■■■)

STELLA A. HALDERMAN, Appellant, *vs.* ELIZA HALDERMAN *et al.* Appellees.

*Opinion filed February 18, 1931.*

JOHN T. RICHARDS, for appellant.

SIMS, GODMAN & STRANSKY, (FRANKLIN J. STRANSKY, and T. I. McKNIGHT, of counsel,) for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook county sustaining a demurrer to a bill in equity filed by appellant in that court and dismissing the bill for want of equity.

The bill seeks construction of the will of Joseph A. Halderman, deceased husband of appellant. The facts alleged in the bill and admitted by the demurrer are, that Halderman died on March 22, 1927. The will probated as his last will and testament was executed July 31, 1901. The first clause provides for the payment of debts and funeral expenses. The second clause is as follows:

"*Second*—After the payment of such funeral expenses and debts, I give, devise and bequeath to my beloved wife, Stella A. Halderman, my entire real and personal property wherever found, consisting of an undivided one-half interest in the properties at 4440 to 4448 Calumet avenue and 5246 and 5248 Calumet avenue, Chicago, Illinois. One lot in Middletown, Ohio. One house and lot in Garden City, Kansas, and all furniture, pictures, etc., in my flat at 5248 Calumet avenue, Chicago, Ill., and all moneys or other personal property I may be possessed of at my death, said real estate to be held as an investment, or converted into money (and if so, to be loaned out on 1st mortgage R. E. security) whichever is deemed best by my executors.

"Lastly, I make, constitute and appoint my brothers, C. W. Halderman and O. E. Halderman, of Marion, Indiana, to be executors of this my last will and testament."

The brothers named executors reside in the State of Indiana, and not being qualified to act in the capacity named, appellant was appointed administratrix with will annexed.

The bill alleges that by this will the testator devised and bequeathed to appellant his entire estate, both real and personal; that at the time of the execution of the will the testator owned the real estate therein described but long prior to his death conveyed all of said described real estate and acquired other real estate which the bill shows to have been inventoried by appellant as administratrix. No children were born to the testator and appellant, and she, with his mother and two brothers, are his only heirs-at-law. At the time the will was executed the testator owned no real property other than that described in the will. The bill alleges that the will is ambiguous in its provisions relative to the discharge of the duties of those named as executors and is uncertain as to the title to all real estate acquired subsequent to the making of the will, and the bill prays construction of the will. As counsel on both sides seem to concede that the trust provisions of the will are so uncertain and

indefinite, both as to manner and time of the execution of the trust, as to be unenforcible, it does not become necessary here to discuss that feature of the bill. The question here is whether, under the second clause of the will, after-acquired real estate of which the testator died seized was devised to appellant by the will or descended as intestate property.

Appellant contends that by the use of the language, "my entire real and personal property wherever found," it is made affirmatively to appear in the will that the testator intended that all real estate of which he died seized, as well as his personal property, should pass to appellant. Appellees, on the other hand, argue that by the description of specific real estate it appears from the will that the testator intended that the expression, "my entire real and personal property wherever found," should be restricted to the real property there described, and that this is further borne out by the language following the description of the real estate and certain furnishings, by which language he bequeaths to appellant "all moneys or other personal property I may be possessed of at my death" but which omits any reference to real estate.

It has been so many times stated as to require no citation of authority, that the cardinal purpose in the construction of a will is to determine the intention of the testator. In this the court is conferring no right and limits no privilege. There is not given to the court, in the discharge of this duty, the power or direction to make a will or to do other than to determine what the testator intended. The intention of the testator is not what a testator by a perfectly drawn will might have intended, but what did this testator in this will intend. It is his right to dispose of his property as he desires, subject to the contravention of rules of law. In the construction of a will courts are expected to, and do, endeavor to find what the testator intended. In approaching the question in this case it is well

to bear in mind that section 1 of the statute on wills has since 1845 provided, in substance, "that every male person of the age of twenty-one years, and every female of the age of eighteen years, being of sound mind and memory, shall have power to devise all the estate, right, title and interest, in possession, reversion or remainder, which he or she hath, or at the time of his or her death shall have, of, in and to any lands, tenements, hereditaments, annuities or rents, charged upon or issuing out of them, or goods and chattels, and personal estate of every description whatsoever, by will or testament."

At common law the power to pass property by will did not exist. It arose by statute, and therefore depends for its extent upon legislative intention. Under the common law seizin was a necessary element in all conveyances of real estate, and under the English statute of 32 Henry VIII, and under the statutes of such States as have adopted the English act, the testator was not given power to pass after-acquired property by a will without re-publication of the will with language properly including such newly acquired property. Under the statute of this State, however, this distinction between present owned and after-acquired property is removed. Under this statute the testator may devise his land so as to pass title to all after-acquired property, and the only question arising in any such case is the question uppermost in this case, and is, "Did the testator intend to devise all the real estate of which he should die seized?" If he did, his devise included real estate purchased after the execution of the will as well as that of which he was then seized. If consistent with rules of law such intention must govern. This has been the rule in this State since the early cases of *Willis* v. *Watson,* 4 Scam. 64, and *Peters* v. *Spillman,* 18 Ill. 370, and has been many times reiterated by this court. It was also said by this court in *Watts* v. *Killian,* 300 Ill. 242, *Cummings* v. *Lohr,* 246 id. 577, *Woman's Union Missionary Society* v. *Mead,* 131 id. 338, and other

cases, that in order that a will operate to pass property acquired after the execution of such will it is necessary that an intention of the testator to dispose of after-acquired property affirmatively appear from the will, and counsel argue that therefore a different rule is to be applied regarding the intention of the testator as to such property than applies as to property owned at the time of the making of the will. There is no reason for any such distinction. The statute makes no distinction. It provides no requirements or conditions which apply to the devise of after-acquired property but not to present owned property. By its language the power to pass after-acquired property is exactly the same as the power to pass property in present ownership. The same rules of construction therefore apply to the passing of after-acquired property as apply to the passing of present owned property. The statute does not authorize any different rule. It requires no certain expressions to be used but requires only that the whole will manifested an intention to dispose of all that the testator "at the time of his or her death shall have." No greater degree of particularity is required in the expression of an intention to pass after-acquired property, and no method or rule of construction is required to be applied differing from those rules which courts, from the experience of the ages, have found to be the best means of determining the intention of the testator.

Counsel for appellees argue that the well known presumption against partial intestacy does not apply to after-acquired property because it must affirmatively appear in the will that the testator intended to pass such property. This position is not tenable. It must "affirmatively" appear in the will that the testator intended to pass present owned property as well as after-acquired property. The word "affirmatively," as used in the cases, means merely that the will must show an intention on the part of the testator that such after-acquired property as well as his other property shall pass by the will. This rule is satisfied by the inten-

tion appearing from the language used that all property owned by him at the time of his death shall pass by the will, and it is not necessary to use different language showing a specific intention to dispose of after-acquired property as such. By reason of the great variety in language in wills no case of construction of a will can be said to govern the construction of any other will unless the words of the two wills are in substance the same. The intention must be gathered from the language of the entire will and considered as a whole, and not by extracting therefrom certain language without regard to its relation to the balance of the will. If possible, every word of the will should be given its natural meaning. (*Carlin* v. *Helm,* 331 Ill. 213; *Mc-Clure* v. *McClure,* 319 id. 271; *Whittington* v. *Hunt,* 296 id. 133; *Bender* v. *Bender,* 292 id. 358.) Another rule of construction of wills relates to the application of a presumption that one who makes a will intends to dispose of his entire estate by that means and not to die intestate as to any part thereof. Any reasonable construction of his will that avoids the conclusion of intestacy as to any part of his property will be adopted, (*Jensen* v. *McMahon,* 324 Ill. 574; *Walker* v. *Walker,* 283 id. 11;) and unless it clearly appears to the contrary, a court will adopt any reasonable construction of a will rather than to hold that the testator intended to die intestate as to any part of his property. *Melies* v. *Beatty,* 313 Ill. 418; *Wiltfang* v. *Dirksen,* 295 id. 362; *DesBoeuf* v. *DesBoeuf,* 274 id. 594; *Eyer* v. *Williamson,* 256 id. 540.

With these rules of construction in mind, we come to the consideration of the language of the second clause of this will. As we have seen, the first clause provides for the payment of all legal debts and funeral expenses after the decease of the testator. The second clause provides that after the payment of such funeral expenses and debts, "I give, devise and bequeath to my beloved wife, Stella A. Halderman, my entire real and personal property wherever

found, consisting of, [here describing certain real estate,] and all furniture, pictures, etc., in my flat at 5248 Calumet avenue, Chicago, Ill., and all moneys or other personal property I may be possessed of at my death," etc.

In their argument counsel for appellees say that the fact that the testator described certain real estate shows an intention on his part to pass only that real estate to appellant, and that therefore there is nothing affirmatively appearing in the will from which it can be said that he intended to pass after-acquired property to her. In substance, this argument is that the ordinary meaning of the words, "my entire real * * * property wherever found," is to be limited by the language describing certain real estate. Out of this argument the question arises whether the words "wherever found" were intended by the testator to mean wherever found at the time of the making of the will or at the time of his death. Generally a will speaks as of the time of the death of the testator. Aside from this generally accepted doctrine, however, it seems clear that here the testator could scarcely have intended this language to relate to the time of the making of the will, since he, as it is admitted, particularly described in this clause all of the real estate then owned by him. The words "wherever found" would under such construction have no purpose or meaning in the will. Where the will shows that the testator intended to dispose of all his property, the fact that he described certain property will not prevent the passage of all property owned by him at the time of his death. Expressions in a will of the character of the following have been held to convey after-acquired property: "I bequeath all my property, real and personal, wheresoever the same may be, to my beloved wife." (*Peters* v. *Spillman, supra.*) "I give and bequeath the care, profit and benefit of my whole estate, real and personal, so long as she remains my widow." (*Willis* v. *Watson, supra.*) In *Cummings* v. *Lohr, supra,* the language, "I give and bequeath to Louisa Lohr, my be-

loved wife, all the real estate that I may die seized of, being the land that I now live on in said township of Locust, Christian county," was held to pass other real estate then owned by the testator and not described in the will. It was there also held that the language showed an intention to devise any property which the testator might acquire after the execution of the will, and that the words descriptive of the land he then owned did not show an intention to limit the prior devise of all his real estate. The substance of that holding was, that where the will shows an intention to pass the entire property, the fact of the description of certain property as the property then owned by the testator does not limit the intention to dispose of all his property as shown by the prior language. In *Pingrey* v. *Rulon,* 246 Ill. 109, the will devised to the testator's daughters "all my real estate, the same being situated in McLean county and described as follows:" At that time the testator had four lots in the city of Chenoa, and it was argued that those lots descended as intestate property. It was there held, however, that the language was sufficient to convey all the real estate of the testator because it appeared from the will it was his intent so to do. The opinion in that case cites *Martin* v. *Smith,* 124 Mass. 111. In that case the will contained the following language: "All the real estate I may die possessed of to her and her heirs and assigns forever, which property is situate on the north side of North street in said Lowell." This language was sufficient to show that the testator intended to thus dispose of all his property, including property on the south side of North street.

Counsel for appellees argue, however, that in the Massachusetts case, in *Cummings* v. *Lohr* and in *Pingrey* v. *Rulon,* after-acquired property was not involved. While in each case the property held to pass by the will was owned by the testator when the will was executed and was other than that described in the will, the cases are authority for the rule that where the intention to devise all the testa-

tor's property is shown by the will, property not described or mentioned will pass though the will describes only certain property as owned by the testator. No reason appears why a different rule should be applied to after-acquired property. As to both classes of property it must affirmatively appear that the testator intended by his will to pass all his property.

Counsel for appellees argue, however, that this language cannot be construed without considering the language, "and all moneys or other personal property I may be possessed of at my death." And this is true. They further say that had the testator intended to pass all real estate of which he died seized he would have included a reference to it in this provision, and that since he confined such language to "moneys or other personal property," it shows an intention on his part to exclude from the devise any real estate not described by the will. The will was evidently written by someone not familiar with the making of wills and is inartistically drawn. It appears, however, on consideration of the language, "and all moneys or other personal property I may be possessed of at my death," that it is a reaffirmation of the intention of the testator previously asserted to pass all his personal property owned at the time of his death. The will contains, in effect, the same statement of intention as to personal property in the language, "my entire real and personal property wherever found," which, as we have held, is an affirmation of his intention to pass all his property, both real and personal, of which he died seized. The repetition of that purpose as to personal property in language which contains no repetition of such intention as to real property cannot for that reason be held to amount to a limitation on the first affirmance of his intention to pass all real property of which he should die seized. The mere fact that it is not twice affirmed as to real estate though it is twice affirmed as to personal property is not of itself sufficient to remove from the will

language affirmatively showing an intention to pass all real estate. Nor, for the reasons we have given, is the specific description of the real estate then owned sufficient to efface an affirmative declaration of intention on the part of the testator to pass all of it, as he says, "my entire real and personal property wherever found," to the appellant. There is no inconsistency or repugnance in these provisions of clause 2, and the latter cannot be said to limit the former.

It is argued with some force by counsel for appellant that the testator may have had in mind that his brothers whom he named as executors and who lived in Indiana might not know of the location of the property he then owned, and that he felt it necessary for that reason to describe it in the will. Whatever may have been his thought concerning that matter this court has no means of knowing. The intention of the testator must be drawn from the will.

Counsel for appellees further argue that the language "wherever found" is inapt when applied to real estate but would be an apt reference to personal property, and therefore seem to contend that "wherever found" should relate to personal property, only. Such construction cannot be given to the language without discarding from it all reference to real property. Clearly, the language does not mean only personal property wherever found but property wherever found. This word is described by both the words "real" and "personal." Under no rule of construction could the words "real" and "personal" be separated and one made to apply to the property "wherever found" and the other not. It is quite clear that in making a will the testator seldom, if ever, has in mind the specific description of property which he later acquires, but the rule is satisfied if it appear from the language of the will that it was the general intention of the testator to so convey all property of which he should die seized. *Eckardt* v. *Osborne,* 338 Ill. 611; *Woman's Union Missionary Society* v. *Mead, supra; Decker* v. *Decker,* 121 Ill. 341.

Counsel for appellees cite *Saeger* v. *Bode,* 181 Ill. 514, as authority for their contention that the description of the land then owned by the testator shows that he did not intend to pass after-acquired property. In that case the testator devised to his wife "all my estate, both real and personal, of all kind and description whatsoever, as her sole property forever, and known and described as my homestead farm where I now reside," etc. It was there held that the will showed an intention on the part of the testator to limit his devise by the specific clause describing the homestead farm. In that case, however, the testator showed a clear intention to give all his estate not given to his wife, to his daughter. His language with reference to his gift to her was, that she "have all the property not disposed of in the above bequeath at the death of my said wife," and the court determined from all of the language of the will that the testator's intention was to give his daughter whatever estate he had not already disposed of in previous clauses of the will. It is evident that the circumstances surrounding the testator, as shown by his will in that case, are not similar to those appearing in the case before us. Here no other than the appellant is named as devisee or legatee. Though the testator's brothers are named as executors no gift is made to them. It affirmatively appears from the language of clause 2 herein discussed that the testator intended to pass all property owned by him at the time of his death. We reach this conclusion from the language of the will without the aid of the presumption against partial intestacy, though that presumption is applicable in all cases of the construction of wills, whether affecting after-acquired or present owned property.

The circuit court therefore erred in sustaining the demurrer, and the decree will be reversed and the cause remanded, with directions to enter a decree construing the will in accordance with the views herein expressed.

*Reversed and remanded, with directions.*