Russell L. Murphy et al., Appellees, v. Nellie M. Fox et al., Appellants.

Gen. No. 9,582.

Opinion filed March 12, 1948. Released for publication April 7, 1948.

GUMBART, GRIGSBY & GUMBART, of Macomb, for appellants.

T. MACDOWNING, of Macomb, for appellees.

MR. PRESIDING JUSTICE WHEAT delivered the opinion of the court.

This is an action to construe the will of Leslie Murphy, deceased, the- pertinent provisions of which are as follows:

"SECOND: I give and devise to my sister, Ione Koontz, my farm land (described and located in McDonough County, Illinois) for and during the term of her natural life. . . .

"And to my sister, Nellie M. Fox, I give the sum of Five Thousand Dollars ($5,000.00).

". . . And to each of my living nieces and nephews I give the sum of One Thousand Dollars ($1,000.00).

"The rest, residue and remainder of my estate shall be converted into cash by my Executor hereby giving him full power and authority to make, execute and deliver proper deed or deeds of conveyance to all real estate that I may own at the time of my death and direct that *he is to divide the remainder of my estate after such conversion equally between my two sisters above named and my living nieces and nephews.*" (Emphasis added.)

During his lifetime, testator had two brothers and three sisters, namely, Charles A. Murphy, Oscar Mur-

phy, Alma Fisk, Ione Koontz, and Nellie M. Fox. Of these, the first three predeceased the testator, leaving respectively five, two, and five children who survived the testator. Nellie M. Fox and her three children and Ione Koontz and her two children also survived the testator. Thus testator was survived by two sisters and seventeen nieces and nephews who comprised the five branches of testator's family. It is stipulated that Ione Koontz has since died and that the value of the life estate given to her by the second clause of the will is $5,000.

Nellie M. Fox and her three children and the children of Ione Koontz have appealed from the decree of the circuit court of McDonough county which finds that the testator intended that the residue be divided into nineteen equal parts and distributed one part to Nellie M. Fox, one part to Ione Koontz, and one part to each of the seventeen nieces and nephews who survived the testator.

Appellants contend that under a proper construction of the will, the residue should be divided into three equal parts and distributed, one part to Nellie M. Fox, one part to the estate of Ione Koontz, and the third part in seventeen equal shares to the testator's surviving nieces and nephews. To sustain this contention, appellants rely largely on extended quotation from Illinois Supreme Court decisions involving gifts to one or more named individuals and to the children of another "equally" or "share and share alike," wherein it has been held that equality among the stirpes or branches of the testator's family was intended. (*Dollander v. Dhaemers,* 297 Ill. 274 (1921); *Palmer v. Jones,* 299 Ill. 263 (1922); *Beal v. Higgins,* 303 Ill. 370 (1922); *Dahmer v. Wensler,* 350 Ill. 23 (1933); and *Condee v. Trout,* 379 Ill. 89 (1942).) Appellees rely upon decisions from the same line of cases wherein it has been held that a *per capita* distribution was intended. (*Pitney v. Brown,* 44 Ill. 363 (1867);

*McCartney v. Osburn,* 118 Ill. 403 (1886); and *Carlin v. Helm,* 331 Ill. 213 (1928).)

In *Pitney v. Brown,* the testator directed that the residue of his estate "be equally divided between" the children of a deceased named brother and testator's named brother-in-law. The court, while "inclined to think that equality per stirpes would be the more natural construction," felt itself bound by the rule of construction laid down in earlier cases and by *Jarman on Wills,* stating that in such case the testator is to be understood as intending a distribution *per capita.* On the basis of similar reasoning, a distribution *per capita* was likewise directed in *McCartney v. Osburn,* supra, which involved a limitation to the children of testator's named daughter and another named individual, "each to share and share alike."

The later case of *Dollander v. Dhaemers,* supra, relied on by appellants, involved a gift to testator's seven named children and the children of a named deceased child of the testator, "share and share alike." The court reviewed at length the English decisions, and cases from other American jurisdictions, and cited with apparent approval *Pitney v. Brown* and *McCartney v. Osburn,* supra. The court then noted that the rule stated by Jarman and relied upon in the two latter cases will, on Jarman's authority (297 Ill. at p. 273 and 279) "yield to a very faint glimpse of a different intention in the context." Apparently such indication was found by the court in the manner in which the testator had designated, as takers, the children of his deceased daughter. The fact that these takers were designated not in terms of their individual relationship to the testator but in terms of their relationship to testator's daughter seems to have satisfied the court that they were intended by the testator to take as representatives of and in substitution for the testator's deceased named daughter. The court accordingly directed a stirpital division in eight equal parts,

one part to each of the seven living children and the eighth part in equal shares to the children of testator's deceased daughter. It is noteworthy that a similar rationale might well have been applied in *Pitney v. Brown* and *McCartney v. Osburn* to achieve a similar result and that factors claimed to constitute the "faint glimpse" alluded to by Jarman were urged upon and rejected by the court in the two earlier cases. Indeed, the court in the *Dollander* case, seems to concede this by admitting at the closing of the opinion that "the conclusion . . . reached may not be supported by the majority of American and English authorities."

The rule of construction announced in the *Pitney* and *McCartney* decisions seems to have been further vitiated in the more recent cases of *Palmer v. Jones,* 299 Ill. 263 (1922); *Beal v. Higgins,* 303 Ill. 370 (1922); and *Dahmer v. Wensler,* 350 Ill. 23 (1932), wherein the doctrine announced in *Dollander v. Dhaemers* has been reaffirmed in similar factual situations. This doctrine has been further strengthened by analogy to the provisions of the Statute of Descent. In the decision in *Dollander v. Dhaemers,* it is stated that "where there is an ambiguity existing in a will, unless there is a manifest intention to the contrary, 'the presumption that the testator intended that his property should go in accordance with the laws of descent and distribution will be applied as an aid in construing the will.'" This rule of construction has been applied more recently in *Condee v. Trout,* 379 Ill. 89 at p. 93. (See also Carey & Schuyler, Illinois Law of Future Interests, sec. 281.)

From these decisions it would appear that in this state a stirpital division in the type situation involved in these cases has become the rule and a *per capita* distribution the exception in direct opposition to Jarman and the earlier Illinois decisions. (See Carey & Schuyler, op. cit. sec. 275, p. 385, and *Condee v. Trout,*

*supra* at pp. 92 and 93, apparently in accord; to the contrary, however, see the dissenting opinion of MR. JUSTICE FARTHING in *Henry v. Henry,* 378 Ill. 581 at p. 594 (1942).)

This conclusion is not contradicted by the decision in *Carlin v. Helm,* 331 Ill. 213 (1928), relied upon by appellees in support of a distribution *per capita.* In that case there was a gift to testator's "lawful heirs" who were defined in the will as a named daughter and her children and a named grandson, "to be divided equally between them." In these circumstances a division *per capita* was clearly indicated because it was manifest that each person defined as an "heir" was to share in the gift which would not have been possible under a stirpital division.

The construction contended for by appellants in the instant case would result in distribution of the following approximate percentages of the residue to the five branches of testator's family: to Nellie M. Fox and her children, 39 per cent; to the estate of Ione Koontz and the children of Ione Koontz, 37 per cent; to the children of Charles A. Murphy, 10 per cent; to the children of Alma Fisk, 10 per cent; and to the children of Oscar Murphy, 4 per cent. Clearly, distribution in such shares is the antithesis of stirpital equality within the meaning of the cases discussed above and relied on by appellants. Appellants appear to concede this in their reply brief, but contend that these cases are here pertinent because they demonstrate that our Supreme Court favors a distribution *per stirpes* rather than *per capita* as contended for by appellees. Appellants' contention that the testator in the instant case intended to make three equal gifts, two to named individuals, and a third to a class consisting of testator's living nieces and nephews therefore stands unsupported by citation of any authority directly in point.

■ Assuming that the rule announced in *Dollander v. Dhaemers* and followed in succeeding cases may be applicable by analogy in the instant case, we direct attention to the fact that this rule is, or should be, a rule of construction only, and as such is applicable only when a contrary testamentary intent cannot be ascertained from the will considered in its entirety. If, as the courts have reiterated countless times, testamentary intent is in any meaningful sense the polar star of will construction, it must be remembered that such rules are rules of construction only, and not hard and fast rules of law. (*cf.*, *Northern Trust Co. v. Wheeler*, 345 Ill. 182 (1931), pp. 189 ff.)·

It seems clear that the language of the will here involved does not support a stirpital division of the residue. The testator has designated a part of the takers as his "nieces and nephews" and not as the children of his brothers and sisters. This is by no means a mere verbal distinction or play upon words. While the testator's nieces and nephews are by definition the same persons as the children of his brothers and sisters, the mode of expression used by the testator may fairly be considered to determine whether he viewed them as individuals to take in their own right or whether he regarded them as merely representatives of a deceased brother or sister. (Compare the rationale in *Dollander v. Dhaemers.*) As the nieces and nephews are here designated in their relationship to the testator, it may fairly be inferred that he thought of them as individuals in their own right. Intent to achieve stirpital equality is further and conclusively negatived, as in *Carlin v. Helm,* supra, by the fact that testator clearly intended that all·his living nieces and nephews and also their living parents should share in·the residue, resulting in double representation of the two stirpes of which his living sisters are members.

We are of the opinion that the will considered as a whole indicates that the testator's intent was not as contended for by either appellants or appellees. It seems to us that the provisions for specific legacies contained in the second clause of the will taken together with the residuary clause are indicative of an over-all plan which the testator had in mind. It appears from the second clause that the testator considered his two sisters together as a group and held them in equal affection, as he gave equal legacies to each. It further appears that he considered his nieces and nephews as a separate and distinct group and held them in equal regard among themselves. That he viewed each sister as more needy or more deserving than any individual niece or nephew is also apparent from the amounts of their respective specific legacies, that is, $5,000 to each of the sisters, and $1,000 to each of the nephews and nieces. Whether these two groups are "classes" in a technical sense, we have no occasion to decide.

These same two groups are set apart and contrasted in the residuary clause as testator's "two sisters above named" and his "living nieces and nephews." So viewed, the use of the word "between," in the direction for equal division with respect to the two groups, is natural and at the same time constitutes correct usage. (See *Henry v. Henry,* 378 Ill. 581 (1942), wherein the significance of "between" is discussed at length and found to be the "key word" in determining the testator's intent.) While we should hesitate to base our decision wholly upon the premise that "between" is used in its technically proper sense and therefore connotes or implies a division as to two groups only, we find the assumption that "between" was not properly used unwarranted under the circumstances before us.

Accordingly we are of the opinion that the will viewed in its entirety discloses that the testator

intended a basic division of the residue into two equal parts, that one of these parts be distributed in equal shares to testator's two named sisters, each taking one-fourth ($1/4$) part of the residuary estate, and that the other part be divided into seventeen equal shares and distributed one share to each of testator's nieces and nephews living at his death, each taking one-thirty-fourth (1/34) part of the residuary estate.

We find no merit in appellants' contention that the circuit court should have dismissed the complaint because the same action was pending before the county court. Cases cited by appellants in this connection go only to show that the county court sitting as a probate court has certain equitable powers, among which is necessarily the power to construe a will in the course of administration of an estate. It does not follow, however, that the county court's jurisdiction to construe is exclusive, and it seems clear to us from the provisions of ch. 22, par. 50, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 106.13], and the cases and the practice thereunder that the circuit court clearly had jurisdiction to construe the will despite the fact that the estate of Leslie Murphy was then in the process of administration before the county court. (*cf.*, *Minkler v. Simons*, 172 Ill. 323 (1898) at pp. 326, 327.)

Appellants' final contention that the circuit court erred in finding plaintiffs entitled to attorney's fees and in directing the executor to pay such fees and the costs of the proceeding out of the estate is likewise without merit. "It is the settled law of this State that where a will is so ambiguous or uncertain as to require construction, the costs and expenses of the proceeding to construe, including reasonable fees for complainant's solicitors, should be taxed against and paid by the estate." (*Guerin v. Guerin*, 270 Ill. 239 (1915) at pp. 250, 251 and cases cited therein. See also *McCormick v. Hall*, 337 Ill. 232 (1929).) In view of our conclusions above and the contentions of the

parties hereto, it cannot be effectively denied that there is sufficient ambiguity in the language of this will to justify application to a court of equity for construction thereof.

The decree of the circuit court of McDonough county is reversed and the cause remanded with directions to enter a decree construing the will in accordance with this opinion. The costs are to be equally divided between appellants and appellees.

*Reversed and remanded with directions.*