# Young's Appeal.

Testator devised " the residue of my estate, real, personal and mixed, to my beloved wife, for and during her life; and further, I will that at her decease such moneys or property as she may possess be equally divided between her relations and mine, or such of them as she may believe most worthy." Testator's wife survived him, and died, leaving a will, in which she directed the estate to be divided equally between her late husband's relations and her own, one-half to go to six of her relations, share and share alike, and the other half to nineteen of her husband's relations, in proportions named in her will. The court below held that the wife had power to appoint the beneficiaries under the will of her husband, but that she should have distributed the funds among the appointees per capita. Held (reversing the court below), that the division of the property made by the wife was in accordance with the true intent of the testator.

| 83 | 59 |
| 159 | 349 |
| 83 | 59 |
| 162 | 373 |
| 83 | 59 |
| 202 | 552 |

November 9th 1876. Before AGNEW, C. J., SHARSWOOD, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS and MERCUR, JJ., absent.

Appeal from the decree of the Orphans' Court of Allegheny county, No. 132 : Of October and November Term 1876.

This was the appeal of Mary Young from the decree of the Orphans' Court of Allegheny county, distributing the balance in the hands of Graham Scott, the executor under the wills of Andrew Beggs, deceased, and his wife, Alcy Beggs, deceased.

Andrew Beggs died in 1853, leaving a will which contained the following clause:—

" I will the residue of my estate, real, personal and mixed, to my beloved wife, Alcy, for and during her life; and, further, I will that at her decease, such moneys or property as she may possess be equally divided between her relations and mine, or such of them as she may believe most worthy."

Graham Scott and Alcy Beggs, the wife of testator, were named as executor and executrix in this will.

Alcy Beggs survived her husband and died twenty-two years after his death, leaving a will, which, after a recital of the foregoing

[Young's Appeal.]

provision of her deceased husband's will, gave the following directions :—

" I will, devise and bequeath whatever may remain of my estate, or that willed me by my late husband, undisposed of at my decease, real, personal or mixed, wherever found, be converted into money as soon as convenient after my death, and after paying my debts and funeral expenses, as before mentioned, and the legacies mentioned in my late husband's will, that whatsoever may remain be divided equally between my late husband's relations and mine, in the following manner, viz. : One half I give and bequeath unto the children of my two sisters, Delilah Cracraft and Rachael Hull, viz. : Mary Young, Zedock Cracraft, Rachael Dunn and Hannah Young, children of Delilah Cracraft, and Maria Hull and Delilah Hull, children of Rachael Hull, each share and share alike, if they are all alive and can be found at my decease, and if they are dead or should die before me, then to their children, if they have any, but if they have none, to be divided equally between the others. The other half I give and bequeath unto the relations of my late husband, to be divided among them as follows, viz. : To my brother-in-law, Thomas Beggs, one-tenth. To my sister-in-law, Mary Ann Wagoner, one-tenth. To Clara, daughter of Joseph Beggs, deceased, one-tenth. To Maria, daughter of Joseph Beggs, deceased, one-fifteenth. To Ann Eliza, daughter of Joseph Beggs, deceased, one-fifteenth. To John, son of Joseph Beggs, deceased, one-thirtieth. To Rosanna Brown (my niece), one-thirtieth. To John Brown (my nephew), one-thirtieth. To Andrew Brown (my nephew), one-thirtieth. To my nephew, Andrew Beggs, one-tenth. To my nephew, R. J. Beggs, one-fifteenth. To my nephew, Reuben Beggs, one-fifteenth. To Martha, widow of my nephew, Basle W. Beggs, one-fifteenth. To Lewis Leon, Leonora, Mary, Sarah, Alcy and Margaret, children of my nephew, Andrew Beggs, one-tenth equally divided between them. To my grand-nephew, Andrew, son of John Beggs, one-thirtieth. Should any of the above die before me, their share shall go to their children or next of kin ; and, in order to enable my executors hereinafter named, to carry out the provisions of this will, I do hereby authorize and empower them to sell at public or private sale, as they may deem for the best advantage, all my property belonging to my husband's estate, wherever found, real, personal or mixed."

Graham Scott, who was executor under the will of both decedents, and Andrew Young, who was executor under the will of Alcy Beggs, applied to the Orphans' Court for the sale of the real estate of decedents for the purpose of distribution under their wills, and upon the court ruling that Mrs. Beggs, in directing a conversion of the real estate, had not exceeded her authority, and that her executors had power to sell without further directions, the real

estate was sold and Graham Scott subsequently filed his first account, admitting a balance of $6366.21, which constituted the fund for distribution in the case.

In making distribution of this balance the Orphans' Court decided, that the fund should be paid in accordance with a schedule attached, which gave to each of the twenty-one parties named in the will of Alcy Beggs $244.01, being an equal share of the whole balance.

In an opinion the court said: "That Alcy Beggs was invested with a power of selection by the will of Andrew Beggs, deceased, is beyond question. She was directed to divide the estate of her testator amongst 'such' of his and her 'relations' as she might deem most worthy. The use of the word 'such' implied a power of selection: Huntley v. Gregson, 1 Term R. 432; Spring v. Biles, 2d (note). It follows that the beneficiaries named in the will of Alcy Beggs, deceased, were well appointed, whether within or without the statute of distribution. In what shares or proportions are these beneficiaries to stand? Andrew Beggs directed that his estate should 'be equally divided' between 'such of his wife's and his relations as she might deem most worthy.' Whatever of difficulty there may be, appears on the face of the will, and may be solved by the application of the ordinary rules of construction in such cases: Best v. Hammond, 5 P. F. Smith 412. How then shall division be made? The authorities agree that where a testator designates the objects of his bequest or devise by their relationship to living ancestors, such legatees or devisees take not by representation, but *immediately* of the testator and *per capita*. The reference to living ancestors is merely descriptive of the objects of bounty, and excludes the *per stirpes* rule: Witmer v. Ebersole, 5 Barr 458.

"The line of argument adopted in the case of McNeilledge v. Galbraith, 8 S. & R. 43, is peculiarly appropriate to the present case. There as here the testator had given his estate to his wife for life, and directed that at her decease said estate should 'be divided between her and my poor relations equally.' The same question was raised and discussed there as here with respect to the proper mode of distribution. The bequest was construed as though the word 'poor' had not been used, so that the two cases, so far as the question of distribution is concerned, are in *quatuor pedibus* with each other.

"So far, therefore, as the *distribution* made by Mrs. Beggs affects the estate of Andrew Beggs, deceased, she has exceeded her powers. The division should have been made equally between the appointees. With this exception the power with which Mrs. Beggs was invested was well executed. It is well settled that the execution of a power may be good as to part: Hegarty's Appeal, 25 P. F. Smith 503;

Bristow *v.* Warde, 2 Vesey 336. And the court will correct that in which the donee has failed.

" The fund in hands of the accountant, being proceeds of the sale of the real estate of Andrew Beggs, deceased, will therefore be distributed amongst the appointees named in the will of Alcy Beggs, deceased, *per capita.*"

From this decision Mary Young appealed and assigned for error this decree of the court.

*J. C. Young* and *J. M. Stoner,* for appellant.—The wife of decedent executed the power given in her husband's will by dividing the fund into moieties, and giving one moiety to each side of the house, and this interpretation of her husband's will should prevail.

It may be admitted that when a testator designates the objects of his bounty by their relationship to a living ancestor, or where he directs it to be equally divided between them, he is in general held to mean that they shall take *per capita* and not *per stirpes.* But this mode of construction will yield to a very faint glimpse of a different intention in the context. Thus the mere fact that the annual income, until the distribution of the capital, is applicable *per stirpes,* has been held to constitute a sufficient ground for presuming that a like principle was to govern the gift of the capital : 2 Jarman on Wills 112, marg. paging.

On this ground the rule has been repeatedly disregarded in Pennsylvania : Fissel's Appeal, 3 Casey 55 ; Minter's Appeal, 4 Wright 111 ; Gring's Appeal, 7 Casey 292 ; Risk's Appeal, 2 P. F. Smith 269. Vide also Roome *v.* Counter, 1 Halstead 111 ; Bool *et ux. v.* Mix, 17 Wend. 119 ; Alder *v.* Beall, 11 Gill & Johns. 123.

*Slagle & Wiley,* for appellees Rosanna, John and Andrew Brown.—The construction contended for by appellants is inconsistent with the ruling in McNeilledge *v.* Galbraith, 8 S. & R. 43, where the words of the will were almost identical with those in this will. They differ only in the location of the word *equally,* and the addition of the words which convey a power of appointment to Alcy Beggs. That power was defective and void when she undertook to provide for an unequal distribution and did not make the division *per capita.* It was fully executed when she designated the persons to take her husband's bounty. The court will support the execution so far as the power warrants and treat the rest as surplusage : Russell *v.* Kennedy, 16 P. F. Smith 248 ; Horwitz *v.* Norris, 13 Wright 213.

Mr. Justice MERCUR delivered the opinion of the court, January 2d 1877.

[Young's Appeal.]

The correctness of this decree is to be determined by the construction given to the will of Andrew Beggs. The clause in question is in these words:—

"3d. I will the residue of my estate, real, personal and mixed, to my beloved wife, Alcy, for and during her life; and, further, I will that at her decease such moneys or property as she may possess be equally divided between her relations and mine, or such of them as she may believe most worthy."

It may be conceded as a rule of construction in a will, that when a testator designates the objects of his gift by their relationship to a living ancestor, they take equal shares, *per capita :* McNeilledge *v.* Galbraith, 8 S. & R. 43 ; Same *v.* Barclay, 11 Id. 103 ; Risk's Appeal, 2 P. F. Smith 269. But nevertheless, like all other constructions when applied to wills, it must be controlled by the general intention of the testator.

In Walker *v.* Griffin's Heirs, 11 Wheat. 375, the devise was, " I do request one-fourth part to be given to the families of G. Holloway, William B. Blackbowen and A. Bartlett, to those of their children that my wife may think proper; but in a greater proportion to Francis P. Holloway than to any other of G. Holloway's children ; and to Elizabeth P. Bartlett in a greater proportion than to any of A. Bartlett's children. The balance to be given to the families of Cyrus, and John T. Griffin's children, in equal proportion." It was held that each of the first-named three families took as a single devisee, without any regard to the number of persons composing the family, and also that the children of Cyrus and John T. Griffin took *per stirpes* and not *per capita,* and that the property devised to them was to be divided into two equal parts, one moiety to be assigned to each family.

In Baskin's Appeal, 3 Barr 304, the testator left three children and four grandchildren (the children of a deceased son). After some specific devises he directed the residue to " be equally divided between all the heirs." It was held that the residuary estate passed to his children and grandchildren *per stirpes.*

In Minter's Appeal, 4 Wright 111, the testator distributed his property " share and share alike among the children of my brother Adam, and the children of my brother Martin, and to my sister Barbara," and the latter died before the testator, leaving children : it was held that the classification was not changed by the death of his sister, and that the legatees should be divided into three classes, and each class take as their parents would have done *per stirpes.*

In Risk's Appeal, *supra,* the testator made an equal division among his children, of a portion of his estate, and then ordered his real estate to be sold. After giving a specific sum therefrom to one of his two sons, he directed the residue to be " equally divided between my beloved children George and Joseph and the children

of my beloved daughter Catharine (now wife of James Risk)," it was held that Catharine's children took *per stirpes*.

What then does the language of this will indicate to be the intention of the testator? After the expiration of the life estate of his wife, he directs the property to "be equally divided between her relations and mine." He and his wife were childless. There was no issue of either to whom the property could be transmitted. It may have been the joint product of their industry and economy. This or some other moving cause prompted him to direct that the property be "equally divided" between families of different blood. The language clearly points to one general division, one separation of the fund. Two classes were in his mind. One class was his relations, the other class was his wife's relations. The property was to be equally divided "between" these two classes, and each class to take one half. His relations one half, his wife's relations the other half. Neither the language nor the spirit of the will indicates that each relation should have an equal share. To reach such a result would require all the relations of each, the testator and his wife, to be thrown together in one class, regardless of their relative number. So, if the wife had twenty and the testator two, her relations would take ten times as much as his relations. That would be a most manifest disregard of the direction for an equal division between the two families.

It follows, therefore, that the division of the property made by Alcy Beggs, is according to the true spirit and intent of the will of Andrew Beggs, and the court erred in decreeing the distribution to be made *per capita*.

> Decree reversed, and the record is remitted with instructions to make distribution conformably with this opinion.