D. JANE MOSIER, Exrx. *et al. v.* MARTHA E. BOWSER *et al.*

and

MARTHA E. BOWSER *et al. v.* GEORGE L. PICKETT *et al.*

*Opinion filed February 21, 1907—Rehearing denied April 3, 1907.*

1. WILLS—*testator's intention is to be gathered from view of the whole will.* The intention of the testator is to be gathered from a view of the whole will, and when so ascertained it must govern; and particular words and provisions seemingly inconsistent with such intention must be rejected, especially when the will is written by the testator, who was not learned in the law and might have used words incorrectly, through ignorance or mistake.

2. SAME—*duty of court is to give effect to testator's intention.* In construing a will it is the duty of the court, if possible, to give effect to the intention of the testator by considering the whole will and his entire plan and comparing and harmonizing the different provisions with each other.

3. SAME—*will construed as to wife's right to life estate in income from proceeds of sale.* Where the clear intention of the testator is to give his wife a life estate in the income of his personal property, a provision, added to expedite the settlement of the estate, authorizing the wife, as executrix, to sell all land located outside of the State, fixing a certain compensation for her trouble and directing distribution to be made equally between the relations of the testator and his wife, "according to their heirship," but without fixing a time for distribution, will be construed as intending to provide for a sale of such real estate and to fix a definite portion for expenses, and not as intending an immediate distribution of the proceeds or as depriving the wife of her life estate in the income of the proceeds of a sale as a part of the personal property of the testator.

4. SAME—*provision construed as to wife's rights in proceeds of notes collected.* A provision in a will that promissory notes falling due after the testator's death should be collected by the wife as executrix, who might retain not to exceed twenty-five per cent for her own individual use for traveling expenses or otherwise, the "principal" to be equally divided among the relations of the testator and his wife "according to their heirship," will be construed as inserted to give the wife absolute title to a certain percentage of the notes and not as depriving her of a life estate in the income of the proceeds of the notes, where the clear intention of the testator, as previously expressed in the will, was to give his wife a life estate in the income of the testator's property, and where the notes falling due after his death constituted almost the entire personal estate.

5. SAME—*the time of distribution does not depend upon whether legacy is specific or residuary.* The question whether there is to be an immediate distribution of property does not depend upon the nature of the legacy, as being specific or residuary, since there may be a life estate in a specific legacy.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Champaign county; and writ of error to the circuit court of Champaign county; the Hon. SOLON PHILBRICK, Judge, presiding.

F. M. GREEN & SON, and GEORGE W. GERE, for appellants and plaintiffs in error.

MARY E. MILLER, (FRANK H. BOGGS, of counsel,) for appellees and defendants in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

D. Jane Mosier, appellant and plaintiff in error, in her own right and as executrix of the will of her deceased husband, Philip C. Mosier, together with certain of her relatives interested in said will, filed a bill in the circuit court of Champaign county asking for a construction of said will, and Martha E. Bowser and George L. Pickett, with others, were made defendants. The circuit court construed the will, and Martha E. Bowser and George L. Pickett appealed to the Appellate Court for the Third District from the construction given as to the personal property, and the Appellate Court reversed the decree and remanded the cause for further proceedings not inconsistent with the views expressed in an opinion filed. The views were of such a nature that no other action could be taken by the circuit court except to enter a decree in accordance therewith. D. Jane Mosier prosecuted an appeal from the judgment of the Appellate

Court and also sued out a writ of error from this court to the circuit court to review the decree. No question is raised as to the propriety of dividing the case for review between different courts, and as this court now has jurisdiction of the entire case the question is of no present importance.

Philip C. Mosier died on April 4, 1900, leaving his holographic will and codicils thereto. The will was made March 4, 1897, and the first codicil was dated May 19, 1899, the second December 7, 1899, and the third January 30, 1900. The will and codicils are as follows:

"After my lawful debts are paid, I give and bequeath to my dear wife, Mrs. D. Jane Mosier all my personal and real estate of whatsoever kind or quality. To have and to hold and enjoy the rents and profits of the same during her natural lifetime. Except what hereinafter may be mentioned to be disposed of otherwise.

"At the death of my dear wif I give and bequeath to George T. Poage (who I raised) a life lease in and to the North (½) of the North east quarter of Section twenty (20) Township eighteen North of Range Fourteen west, in Champaign County and State of Illinois. And at his death The same shal go to his children In whom an absolute Title shal vest. Provided They the said children have a child or children born to them who live to enjoy the same, otherwise the title shall revert back to my estate to be enjoyed by my and my dear wife's relation according to their inheritanc.

"To Valentine Jacobus (who I raised) I give and Bequeath the south half of the said North East quarter Section twenty (20) Town 18 N. R. 14 W. To be enjoyed by him and children upon the same terms and conditions as that bequeathed to George T. Poage and his children.

"And in order that the said George T. Poage and Valentine Jacobus may share and share alike as near as possible, I direct that after my dear wifes death, Valentine Jacobus shal have the use or Rent of the whole quarter section for

the period of one crop season, That He may balance up with the said George T. Poage on Improvements.

"The property belonging to my estate at the death of my dear wife Exclusive of that Bequeathed to George T. Poage and Valentine Jacobus or their children, I direct and order that it or the Proceed thereof shall be equally divided between my and my dear wifes relations according to their heirship  The heirship not to desend further than to and includ grand Nephews and Nieces.

"And I further order and direct That whatever of my Estate by law would fall to Mrs. R. L. Poisal (my dear wifes Sister) the same shal go to Mrs. Cory Moore Her daughter and in case of her death then to Miss Minnie Moore Her grand daughter  Same as if originally Inherited by her.

"And now in conclusion I do hereby Revok and annul all former Wills made by me. And I do hereby appoint my dear wife Mrs. D. Jane Mosier Administratrix and authorise the court to grant Her letters of Administration without bond or Surety, So the business of my Estate may be settled up with as little delay as consistent to or with the Interest of Heirs or creditors, And whatever Real estate laying outside of Champaign County and State of Illinois belonging to me or my Estate at my death I order and direct to be sold to the best advantag by my dear wife as Administratrix and the Proceed of said sale or sales after retaining Ten (10) per cent for trouble.  Divide equally between my and Her Relation according to their Heirship.

"The real estate indicated is described as follows, viz: (Then follows a description of the real estate lying outside of Champaign county, Illinois, and all of which lies outside of the State of Illinois.)

"And I further order and direct, That any Promissory Notes Falling due after my death and collected collected by my dear wif as Administratrix of my Estate.  The Principal of which shal be Equally divided between my and my

dear wifes Relatives according to their Heirship Except so much as She may want to retain for Her Individual use for Traveling expence or otherwise. Said sum retained shall not be to exceed Twenty five per cent of the Sum or Sums. collected."

First codicil:

"I would first say by way of explanation that Pizarro C. Pickett of Kingman, Kansas, Mrs. Martha E. (Hawkins-Rice) Bowser of Los Angeles, California and George L. Pickett of Anaheim, California are my nearest of kin, And whereas George W. Hawkins of Danville State of Illinois, who at one time was the Husband of the said Mrs. Martha E. Bowser and a separation took place and the said G. W. Hawkins has always treated me kindly I therefore order and direct that Twenty per cent of the Share of my estate that would fall to Pizarro C. Pickett and Twenty per cent of Mrs. Martha E. Bowser's share and Ten (10) per cent of George L. Picketts share shal go to the said George W. Hawkins. Provided He the said Hawkins lives to receive and enjoy it, the same otherwise this bequest shal cease at his death-

"I would say by way of explanation of Mrs. Rachel L. Poisal being disinherited in my said will, That I feared that if any part of my estate went into Her hands at her death it would or a Portion of it go to Byron L. Poisal Her Son and on his death would be Inherited by his wife and thereby go in a direction not desired by me. But as the said Byron L. Poisal is now deceased I still think best to not change my will as the said Byron L. Poisals wife is still living and in case of the death of the said Mrs. Rachel L. Poisal might have some claim through legal inheritance upon Her estate-"

Second codicil:

"I first would Say I do hereby exclude any and all Persons Not blood relations to myself or to my dear wife from shareing any portion of my Estate after my death or the

death of my dear wife, Except Those mentioned in my said Will and First Codicil. To wit: George T. Poage Volentine Jacobus and George W. Hawkins who are not blood relation-

"Secondly, I do hereby disinherit anyone who may try to break my said will by them Self or in combination with others try to break my said will-"

Third codicil:

"I would first Say the Bequests made in said Will to George T. Poage and Volentine Jacobus are Hereby Revoked and in place of said Bequests I give and bequeath to the said George T. Poage the Farm lately purchased of W. J. Johns of Taney County, Missouri, together with Fifty-Six acres lately Secured of the U. S. Government through the said George T. Poage Said lands are described as follows viz:" (Then follows a description of the land in Missouri,) "containing in all Three Hundred and Forty two (342) acres more or less—valued at $2,000 dollars.

"And in addition to the above Bequest I give and bequeath to the said George T. Poage four Thousand ($4,-000) dollars. Less what the said George T. Poage may be indebted to me, Either directly or indirectly at my death.

"To the said Volentine Jacobus I give and Bequeath Lot three (3) and the fifteen feet off the North Side of Lot Four (4) James Buseys addition to the town of Urbana known as the Eggleston Property which I value at three thousand ($3,000) dollars and Lot Seven (7) block four (4) G. W. Webber's 1st ad. to the town of Urbana (Valued at $1,000) all, in the Town or City of Urbana County of Champaign and State of Illinois and known as Sophia Mollendorf Property and in addition to the above bequests I give and bequeath to the said Volentine Jacobus Two Thousand ($2,000) dollars. Making to each of these Parties Poage and Jacobus Six Thousand. dollars each, less what they may be indebted to me at my death. These Bequests to be enjoyed by the said Parties after the death of my dear wife and no sooner."

The most important question presented by counsel is whether the widow is entitled to the income, during her life, of the proceeds of real estate lying outside of Champaign county and of the promissory notes falling due after the testator's death. It is apparent that any construction that may be given to the will on that question will not be wholly free from doubt, and some reasons may be given for sustaining each different interpretation insisted upon by the counsel for the different parties. Our duty, however, is to ascertain and give effect to the intention of the testator by considering the whole will and his entire plan, and comparing and harmonizing the different provisions with each other. His intention is to be gathered not from one clause of the will alone, but from a view of the whole will and all its parts. (*Young* v. *Harkleroad*, 166 Ill. 318; *Eldred* v. *Meek,* 183 id. 26.) When that intention is ascertained it must govern, and any particular word or provision which seems to be inconsistent with such intention is to be rejected, especially in view of the fact that the will was written by the testator, who was not learned in the law and may have used words incorrectly through mistake or ignorance.

Looking at the will to ascertain the plan and intention of the testator, it appears that his first thought was to provide for his wife, after the payment of his debts, by giving to her the income, during her natural life, of all his personal or real estate of whatsoever kind or quality, unless some part or portion of it should be afterward mentioned to be disposed of otherwise. He and his wife were childless, and they had taken and raised George T. Poage and Valentine Jacobus as members of the family. He stood *in loco parentis* to them, and his next purpose was to make provisions for them which should be equal, as near as possible. He made such provisions with an arrangement to secure equality. His next of kin were the children of a deceased sister, and his wife had numerous relatives, consisting of brothers and sisters of the whole and half blood, nieces and nephews,

and other more distant relatives. The provision for them came next, and was, that the property, exclusive of that given to Poage and Jacobus, should be equally divided at the death of his wife between his and her relatives according to their heirship, but the heirship not to descend further than grand-nieces and grand-nephews. The share of Mrs. R. L. Poisal was to go to her daughter or grand-daughter. By the terms of the will his whole estate had then been disposed of and he so understood it, and in conclusion revoked and annulled all former wills made by him. He appointed his wife executrix and authorized the court to grant her letters without bond or surety. It would seem that he then bethought himself to make a provision which would expedite the settling of his estate by enabling his wife to sell the real estate outside of Champaign county. He owned real estate in Florida, Missouri, Iowa and Kansas, and the provision for its sale was a sensible one for the purpose which he stated. His statement, "So that the business of my estate may be settled up with as little delay as consistent to or with the interest of heirs or creditors," had no relation whatever to anything that had gone before or to the question of the executrix giving a bond, but clearly related to what followed. He authorized the executrix to sell the real estate which in fact was outside of this State, and fixed the expense or compensation at ten per cent. He then says, "Divide equally between my and her relation according to their heirship." Now, it is very clear that if this was intended to exempt property from the life estate of the wife and to dispose of it otherwise by an immediate distribution, such intention should be clearly manifested. There is nothing in the provision as to time of distribution, and the division must have been intended to be the same as already provided for. If that direction is construed to provide for an immediate distribution between the relatives of the testator and his wife, it would include Mrs. Poisal, who is not excluded there. The testator had provided, as to

the distribution after his wife's death, that Mrs. Poisal's share should go to her daughter or grand-daughter. He had no intention of having her share paid to her, and the intention was unchanged when he made the first codicil. It must have been his intention to have the proceeds of that property divided between the same persons and in the same proportion as the property to be divided after his wife's death, and the direction was simply for division and not for the time of division, about which nothing was said. The division was to be according to heirship, and if he used that term in its legal sense the division could not be made until after the death of his wife, since she could have no heirs in her lifetime. Neither could there be any division until her death, because the quantity which each different person would take in case of intestacy could not be determined until her death.

The next provision relates to promissory notes falling due after the testator's death, and the provision is, that his wife shall retain so much as she may want for her individual use, for traveling expenses or otherwise, not to exceed twenty-five per cent of the sum or sums collected, the principal to be divided equally between his and his wife's relatives, according to their heirship. The same observations already made respecting the word "heirship" apply to this provision, but there is also a material fact to be considered. The notes falling due after the testator's death constitute about all of his personal estate, the remaining personal estate amounting to little more than the taxes due at his death and inheritance tax, and not enough to cover such taxes and funeral expenses. The testator had given to his wife the income for her life of all his personal estate, and it would hardly be thought that by this clause he provided that his wife should only have the use of the proceeds of matured and dishonored notes, and, in effect, that after giving his wife the life use of his personal estate he intended that she should not have the use of any.

If these provisions as to real estate and outside promissory notes constitute specific legacies to be distributed immediately, the taxes, funeral expenses, debts and expenses of administration are chargeable on the estate generally, and real estate must be sold to pay them. If by the term "principal" the testator meant the principal of the notes, which consisted of principal and interest, then he made no provision as to the interest. The circuit court treated these clauses as residuary in their nature, but we do not regard the question whether the legacies were specific or residuary as of any importance. The question whether there is to be an immediate distribution does not depend upon the nature of the legacy, as specific or otherwise, since there may be a life estate in a specific legacy. It seems to us that the construction most consistent with the general plan of the testator is, that the provisions in question were added merely for the purpose of providing for the sale of real estate and fixing a definite per cent of the proceeds for expense, and to give the wife a percentage of the notes, of which she would have the absolute title, to be spent in traveling or otherwise, as she might elect. It is true, as already stated, that there are reasons for adopting a different construction, and they are stated in the opinion of the Appellate Court, the most persuasive of which is, that the testator manifested an intention in the first clause of the will to dispose of some part of his estate otherwise, and if the widow has a life estate in all this property no part of the estate was otherwise disposed of. He did manifest an intention of that kind, but we cannot find that he afterward disposed of any other property in a different way and we cannot supply the provision. The property was given to the same identical persons, in the same proportions and according to heirship, and we cannot say that any of it was taken out of the general provision.

The next question arises on the third codicil, by which the gifts to Poage and Jacobus were revoked and in their place the testator gave to Poage a farm in Missouri valued

at $2000 and in addition $4000, less what Poage might be indebted to him at his death, and to Jacobus certain property in Urbana and $2000, less what Jacobus might be indebted to him at his death, and these gifts are to be enjoyed after the death of the wife, and no sooner. The testator bought the property devised to Poage for $2000 and assumed the payment of a mortgage upon it as part of the consideration. The mortgage encumbrance amounted to $1054.80, and as it was a personal debt of the testator and a lawful charge against the estate, it was lawful for the executrix to pay it. Poage and Jacobus were not entitled to the bequests until after the death of the executrix, and she was not required to make payment until that time.

The remaining question is whether the principal, at the death of the widow, is to be distributed between her relatives and those of the testator *per capita* or *per stirpes,* which will determine the quantity each will take. We think the circuit court was right, and the estate, after the life estate of the widow ceases, is to be divided one-half to the heirs-at-law of the testator and one-half to the heirs-at-law of the widow, excluding all not blood relations and not extending beyond grand-nieces and grand-nephews, and the share of Mrs. R. L. Poisal to go as directed in the will. Each one will take the same quantity provided by the statute in cases of intestacy, and take the same proportion of one-half that such person would take as heir of the testator or his wife, with the limitations before stated. (*Kelley* v. *Vigas,* 112 Ill. 242.) The heirs of the testator were determined as of the time of his death and the heirs of the widow will be determined at her death by the Statute of Descent.

The judgment of the Appellate Court is reversed and the decree of the circuit court is affirmed.

*Judgment reversed.*