(No. 26464.—
F. H. HENRY *et al.* Appellees, *vs.* SARAH A. HENRY *et al.* Appellants.

*Opinion filed Nov. 24, 1941—Rehearing denied January 15, 1942.*

FARTHING, J., dissenting.

KERN, PEARCE & PEARCE, HEFNER & HARRIS, and S. PIERRE ROBINEAU, for appellants.

P. J. KOLB, A. M. WOODFORD, WALTER F. KOLB, and VALMORE PARKER, for appellees.

Mr. CHIEF JUSTICE MURPHY delivered the opinion of the court:

This appeal is from part of a decree entered in the circuit court of Wabash county in a suit to quiet title. A number of persons claim interests in the lands involved and some of them had, prior to the beginning of this suit, executed oil and gas leases covering their respective claims. The rights of the holders of such leases were determined in this litigation and certain defects and irregularities in the chain of title were removed as clouds, but the only part of the decree involved on this appeal pertains to the construction to be given the will of John L. Henry. A freehold is involved.

Aside from a direction as to the payment of debts, the will provides as follows: "I leave and bequeath unto my beloved wife Sarah A. Henry all my estate, consisting of all property, both real and personal property, to have and to hold the same during her natural life and at her death, the residue, if any, shall be equally divided between my brothers and sisters and her heirs, in equal parts."

The testator died in 1892 leaving his wife, Sarah A. Henry, surviving. They had no children. When the testator died he was seized of an undivided one-half interest in a tract of land referred to as tract number one, an undivided one-third interest in tract number two and the whole of the title to tract number three. His wife owned the other undivided interests in tracts one and two. The widow remarried and is now Sarah A. Mussett. She, her husband and their two children are appellants. The testator had nine brothers and sisters living when the will was executed, all of whom survived him. All except his brother Charley died prior to the beginning of this suit. The descendants and representatives of the deceased brothers and sisters, with the surviving brother, forty-seven in all, are appellees.

For a better understanding of the issue presented, brief reference will be made to the matters adjudicated and from which no appeal has been prayed. Appellee Charles V. Henry filed a counterclaim and asked for a construction of the will declaring the devise to the brothers and sisters to be a contingent remainder. The court denied this prayer and decreed that the remainder to the brothers and sisters vested at the time of testator's death subject to the life estate. It was further adjudged that the heirs and representatives of the deceased brothers and sisters took *per stirpes*. No appeal has been taken from that part of the decree and counterclaimant Charles V. Henry has joined as an appellee.

On the hearing appellants contended that the will gave the widow the power to dispose of the entire estate and that such power could be exercised at any time before death. The court rejected such contention and no error is assigned on that ruling. Appellants further contended that the devise to Sarah A. Henry for life and then to her heirs, was within the rule in *Shelley's case* and that whatever the fractional interest might be, the same was, by operation

of the rule vested in the life tenant in fee simple. The court adopted this view and no appeal is taken from that part of the decree.

Appellants' third contention was that the devise of the remainder was to two classes,—one-half to testator's brothers and sisters, constituting one class, and the other one-half to the heirs of Sarah A. Henry, and that by the operation of the rule in *Shelley's case* this one-half was devised to appellant Sarah A. Mussett in fee simple. The legal effect of the decree is that it was a devise to ten persons, viz., the nine brothers and sisters of testator and Sarah A. Henry. The decree vested an undivided one-tenth interest in Charles V. Henry and eight-tenths in the heirs and representatives of the eight deceased brothers and sisters, they taking *per stirpes*. All of said interests were decreed to be subject to the life estate of the widow. As to the remaining one-tenth it was decreed that the rule in *Shelley's case* should be applied and that such interest was thereby vested in Sarah A. Mussett in fee simple. The review on this appeal is limited to this part of the decree.

Appellees contention is that since the words "and her heirs," as here used, have a fixed meaning under the rule in *Shelley's case,* they can not be given any significance in determining the intent of the testator. To state their contention more pointedly, they say the question is not as to the quantity of the title the heirs of Sarah A. Henry would have taken but for the rule in *Shelley's case,* but the question is: What did she take under the rule in *Shelley's case?* They say the will should be construed and given effect as if it read "the residue, if any, shall be equally divided between my brothers and sisters and my wife Sarah A. Henry in equal parts."

Consideration must first be given to the nature of the devise. Was it a devise to individuals, as the chancellor held, or was it a devise to two groups, one of them constituting a class? The devise to the testator's brothers and

sisters was construed by the trial court as a vested remainder. There being no appeal from that part of the decree, we need not consider it further and will refer to their part of the devise as one to a group, merely to distinguish it from the devise to the heirs of Sarah A. Henry.

Disregarding the application of the rule in *Shelley's case*, which will be hereinafter discussed, the words "and her heirs" as used in this will referred to a class of persons,—that is, to the heirs of Sarah A. Henry. While living she has no heirs and who her heirs will be can not be determined until her death. The class is uncertain as to the number that will constitute it and the amount that each will take can not be fixed until the number in the class has been determined.

In *Blackstone* v. *Althouse*, 278 Ill. 481, it was said: "A class, in its ordinary acceptation, is a number or body of persons with common characteristics or in like circumstances or having some common attribute, and, as applied to a devise, it is generally understood to mean a number of persons who stand in the same relation to each other or to the testator." The definition of such a devise in Jarman on Wills (vol. 1, 6th ed. 232) which has been generally approved, is as follows: "A gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal or in some other proportions, the share of each being dependent for its amount upon the ultimate number of persons." The part of the remainder attempted to be devised to the heirs of Sarah A. Henry was a gift to a class.

It is obvious the testator intended a division of the remainder between two groups and that the element of relationship to him or his wife was the basis for such division. He desired to divide his property between his brothers and sisters as one group and his wife's heirs as the other. In expressing his intent he directed that the remainder should

"be equally divided between my brothers and sisters and her heirs, in equal parts." In construing this will and giving effect to the testator's intention, the words used should be given their ordinary meaning. The word "between" used in the sense employed in this will has been given a meaning in many cases that has virtually made it the key word to a determination of the testator's intent.

In *Ihrie's Estate,* 162 Pa. 369, 29 Atl. 750, the court said: "The testator wrote: 'The residue of my estate is to be divided between my husband's grandchildren and the children of Ferdinand Poree.' * * * The word 'between' refers properly to two, and not more. It is true that it is not infrequently used, especially by the uneducated, and colloquially, in the sense of 'among' as referring to more than two objects. But that, admittedly, is not its correct use. * * * On a general view of the whole will we see no ground on which to give the word 'between' any other than its proper meaning; and according to that the grandchildren of General Ihrie are one class, taking half, and the children of Ferdinand Poree are another class, taking the other half, of the residuary estate."

In *Stoutenburgh* v. *Moore,* 37 N. J. Eq. 63, the clause construed was: "All the residue of my estate, real, personal, and mixed, I give, devise, and bequeath the income to my two sons Robert and Edward, to be equally divided between them during their lives, and at their death, to be equally divided between my grandchildren, to them, their heirs and assigns." The court held that the residue going to the grandchildren went in classes and the grandchildren took *per stirpes* and not *per capita,* saying "The language is, 'and at their death to be equally divided between (not among) my grandchildren.' The word 'between' is commonly used in reference to two only, and there is some evidence in the use of the word here of the intention to divide between two families of children."

In *Holbrook* v. *Harrington*, 82 Mass. (16 Gray) 102, the clause to be construed was: "To be equally divided between the heirs of my late husband and the heirs of my brothers and sisters." It was held this gave one-half to the heirs of her husband and the other half to the heirs of her brothers and sisters.

In *Records* v. *Field*, 155 Mo. 314, 55 S. W. 1021, the clause in question was: "The balance of my property and money I want equally divided between the heirs of W. and J. deceased." W. and J. were brothers of the testator, both deceased at the date of the will. Three children and four grandchildren of W. and two children of J. were living at the date of the will and survived the testator. It was held that they took *per stirpes,* and not *per capita,* and that the estate was divided in equal parts to be distributed among the heirs of these two people.

A leading case is *Young's Appeal*, 83 Pa. 59. The clause to be construed was: "I will the residue of my estate, real, personal, and mixed, to my beloved wife Alcy, for and during her life; and, further, I will that at her decease, such moneys or property as she may possess be equally divided between her relations and mine, or such of them as she may believe most worthy." The court said: "What then does the language of this will indicate to be the intention of the testator? After the expiration of the life estate of his wife, he directs the property to 'be equally divided between her relations and mine.' He and his wife were childless. There was no issue of either to whom the property could be transmitted. It may have been the joint product of their industry and economy. This or some other moving cause prompted him to direct that the property be 'equally divided' between families of different blood. The language clearly points to one general division—one separation of the fund. Two classes were in his mind. One class was his relations; the other class was his wife's

relations. The property was to be equally divided 'between' these two classes, and each class to take one half—his relations one half; his wife's relations the other half. Neither the language nor the spirit of the will indicates that each relation should have an equal share. To reach such a result would require all the relations of each, the testator and his wife, to be thrown together in one class, regardless of their relative number. So, if the wife had twenty and the testator two, her relations would take ten times as much as his relations. That would be a most manifest disregard of the direction for an equal division between the two families."

In *Mosier* v. *Bowser*, 226 Ill. 46, the will, after devising a life estate in personal and real property to the wife provided: "The property belonging to my estate at the death of my dear wife, * * * I direct and order that it, or the proceed thereof, shall be equally divided between my and my dear wife's relations according to their heirship. The heirship not to descend further than to and include grandnephews and nieces." Another provision in the will was that the "proceed of said sale or sales * * * divide equally between my and her relation according to their heirship." It was held that after the life estate of the widow terminated, the remainder was to be divided one-half to the heirs-at-law of the testator and one-half to the heirs-at-law of the widow, excluding certain distant blood relatives. Other cases involving similar provisions in wills where the same conclusion was reached, are *Godfrey* v. *Epple*, 100 Oh. St. 447, 126 N. E. 886, *Knutson* v. *Vidders*, 126 Iowa, 511, 102 N. W. 433, *Ruggles Estate*, 104 Me. 333, 71 Atl. 933, and *Rowley* v. *Currie*, 94 N. J. Eq. 606, 120 Atl. 653.

Appellees cite many cases from this and other jurisdictions where the word "between" was considered to have been used by the testator in the sense of a division "among" a number of persons rather than a division between, two

groups or two objects. These cases are evidently controlled by a difference in the relationship of the two classes to the testator or by something else in the context of the will indicating an intent to make a gift *per capita* and not *per stirpes*. Appellees rely upon *Pitney* v. *Brown,* 44 Ill. 363, where the division was directed to be between the children of a deceased brother of testator and a brother-in-law. The rule of construction found in Jarman on Wills, was followed,—*i.e.,* when a legacy is to the children of several persons, they take *per capita* and not *per stirpes*. It is there stated that same rule applies when a bequest is made to a person, described as standing in a certain relation to the testator, and to the children of another person standing in the same relation. The will in this case is distinguishable from the facts upon which the author predicated the rule which the court followed in the *Brown case*. Here the relationship of the brothers and sisters to the testator is quite different from the relationship of the wife's heirs to the testator, and it would be assumed that such devises would be moved by entirely different considerations.

In *Carlin* v. *Helm,* 331 Ill. 213, the will directed that after the termination of the wife's life estate all the property should be divided "between" the lawful heirs of the testator. It was said that it is contended that the second paragraph, bequeathing all property to "my lawful heirs * * * to be equally divided between them" implies a division involving only two legatees and that had a different division been intended the direction should have been to divide among. The court said: "That is true, but it is conceded that, as in the case of punctuation, the use of the word 'between' is not of itself final and conclusive as to the meaning of the testator. The concession is well made. The entire will evinces the testator's intention to have each of the four persons take an equal part. They are entitled to have it divided in equal parts among them, quantity and quality considered." This case is not controlling. The

other cases cited and relied upon by appellees are readily distinguishable from the will at bar.

Under the authorities cited, we are of the opinion that if it were not for the application of the rule in *Shelley's case* the will should be construed as evidencing an intent to divide the remainder in equal parts, one-half to testator's brothers and sisters and the other one-half to a class designated as the heirs of Sarah A. Henry.

The contention made by appellants in reference to the application of the rule in *Shelley's case* raises the question as to whether any consideration shall be given to the intent of the testator as to the quantity of the estate intended to be devised to the heirs of his wife. In other words: Does the application of the rule in *Shelley's case* override the testator's intent as to the fractional part of the remainder he intended to devise to the heirs of his wife? It is well settled that the rule in *Shelley's case* is a rule of property and that it will, under proper circumstances, be applied notwithstanding it violates the manifest intention of the testator. *Havely* v. *Comerford,* 343 Ill. 90.

Notwithstanding the courts of this State have adopted the rule in *Shelley's case* and declared that is so even though its application overrides the intent of the devisor, we do not believe it has been applied to the overriding of the testator's intent to the extent contended for by appellees. The intent of the testator which the application of the rule in *Shelley's case* overrides is as to the character of the estate given to the ancestor and his heirs. Its application takes the estate intended to be devised to the heirs and vests it in the ancestor. In the many cases cited in the briefs, and others we have examined, its application has always been limited to a changing of the estate intended to be devised to the heirs of the testator. The application of the rule does not have the effect of overriding the testator's intention as to the quantity of title intended to be devised to the heirs. If a testator in a will directs that the heirs of

the first taker are to have a fractional part of the title of which he was seized, the application of the rule does not operate to override the intention of the testator and reduce the fractional part of the title from that intended to be given to a lesser amount. If appellees' theory was sustained, the direct effect of the application of the rule would be to take four-tenths of the title which we believe testator intended to devise to the heirs of his wife and vest it in his brothers and sisters. Its application is limited to a transfer of the interest given to the heirs of the ancestor, the first taker, by vesting the whole of the devise in the ancestor in fee simple.

Our conclusion is that the testator intended to devise one-half of the remainder to the heirs of Sarah A. Henry, now Mussett, and, by operation of the rule in *Shelley's case,* that one-half is now vested in fee simple in Sarah A. Mussett, and that the remaining one-half is vested in Charles B. Henry, and the heirs and representatives of the testator's deceased brothers and sisters, they taking *per stirpes.*

For the reasons assigned, that part of the decree limited by the appeal is reversed and the cause remanded, with directions to enter a decree in accordance with the views expressed.

*Reversed and remanded, with directions.*

Mr. JUSTICE FARTHING, dissenting:

For the following reasons I must dissent from the opinion of the majority of the court in this case.

The nine brothers and sisters of the testator do not fit the definition of a devise to a class quoted from Jarman on page 585 of the opinion, as all nine were living when the will was made and survived the testator.

*In re Ihrie's Estate* (Pa.) and *Stoutenburgh* v. *Moore* (N. J.) the word "between" was given its strict meaning, but this is not the rule in Illinois. Here "between" when used in a will has been often interpreted to mean "among"

when applied to more than two persons. See *Pitney* v. *Brown*, 44 Ill. 365; *McCartney* v. *Ozburn*, 118 id. 403; *Carlin* v. *Helm*, 331 id. 213.

Where a question has been repeatedly adjudicated in this State we will look to its decisions rather than those of another State. Every party to this cause now concedes that (1) the devises vested at testator's death and (2) the rule in *Shelley's case* operated at testator's death to vest in Sarah A. Henry (now Mussett) the fee to an undivided interest.

In *Young's Appeal* (Pa.) the words were to "her relations and mine;" in *Mosier* v. *Bowser* (Ill.) they were "my and my dear wife's relations;" in *Godfrey* v. *Eppel* (Ohio) they were "my and my wife's nearest kin;" in *Knutson* v. *Vidders* (Iowa) they were "our lawful heirs on both sides;" in *Ruggles Estate* (Me.) they were "my heirs and the heirs of my late husband."

To the same effect are the following cases cited in the brief of appellants but not in the majority opinion: *Tucker* v. *Nugent*, 104 Me. 333, where the words were "my heirs and the heirs of the said Matthew Dagnan" (who was the husband of testatrix) and *Laisure* v. *Richards*, 103 N. E. (Ind.) 679, where the words were "my nearest blood relatives and the nearest blood relatives of my wife."

These cases are not controlling here and there is no analogy. There is a different reason for these decisions as it is clear in them that the testator meant two classes. The classes were exactly alike and the testator did not know when he wrote the will who if anyone would compose either class. Testator Henry in this case knew his nine brothers and sisters when he wrote his will.

Although the opinion also cites *Rowley* v. *Currie*, 94 N. J. Eq. 606, at page 588 of the opinion as a case of "similar provisions in wills where the same conclusion was reached" that case does not have testamentary provisions similar to

the other cases in this group cited in the opinion and does not reach the same conclusion as those cases. The testamentary words in the *Rowley case* were "to be equally divided, share and share alike, among each of my heirs as would have taken under the laws had I died intestate, and also to Mrs. R. and her children," and the holding was that each heir took one share and each member of Mrs. R.'s family took one share—that all took *per capita* and that it was not a devise to two classes and the reason the court gave was there was no other provision in the will expressing any intention to devise to two classes.

The opinion admits on page 589 that some of the cases where "between" is held to mean "among" are controlled by the fact that there is a difference in the relationship between the testator and the members of the two classes. That is this case because testator's brothers and sisters were all living people in 1891 when the will was made and in 1892 when he died, and they are the people to whom he devised a 9/10ths interest in his land in fee (by operation of the rule in *Shelley's case*) subject to a life estate in his widow, just the same as if he had set out their respective names. The other devisees were whoever would turn out to be his wife's heirs—people not necessarily in being, uncertain in number, to be ascertained in the future and coming within Jarman's definition of a class, and furthermore they were total strangers in blood to the testator.

The rule in Illinois is that when the words "equally," "to be equally divided," "share and share alike," or "in equal parts" or equivalent words are used in a will, they import an intention to divide the property *per capita*. That is the construction to be given unless other words are contained in the will which indicate a division *per stirpes* is intended. *Richards* v. *Miller,* 62 Ill. 419, at p. 425; *Dollander* v. *Dhaemers,* 297 id. 276, at p. 278; *Beall* v. *Beall,* 331 id. 28, at p. 34; and *Carlin* v. *Helm,* 331 id. 213.

As the trial court said there is not even a faint indication in the Henry will that the distribution was to be *per stirpes*. There certainly is no such indication in the punctuation used by the testator but on the other hand it indicates the division to be *per capita* as it is pointed out that the will reads "shall be equally divided between my brothers and sisters and her heirs, in equal parts," and there is no break by a comma or any other punctuation after the word "sisters" but there is a comma after the word "heirs."

The opinion adopted apparently has this rule reversed and goes on the assumption that a devise goes *per stirpes* unless there is something in the context to indicate that it goes *per capita*. The rule is the other way around. Almost without exception it has been held that equally between the "relatives," "heirs," or "next of kin" of the testator and of the husband or wife of the testator, connotes a division into two classes—one-half to each class. Such is the case of *Mosier* v. *Bowser,* 226 Ill. 46, and most all of the cases cited by the court on pages 4, 5, and a part of page 6 of the opinion, including *Holbrook* v. *Harrington,* 82 Mass. (16 Gray) 102, and *Records* v. *Field,* 155 Mo. 314, where the devise was to the "heirs" of one person and the "heirs" of another or the classes were of the same kinship.

This case should not be confused with those cases nor should it be confused with cases containing questions of *per stirpes* and *per capita* as applied to contingent remainders. Henry made no provision in his will for descendants of such of his brothers and sisters who might predecease him. They were all living when he made the will and they are the same brothers and sisters who outlived him one year later when he died. They were all of the same kinship to him so that what they took was undoubtedly *per capita* as to them.

The widow cannot have the rule in *Shelley's case* apply half way or apply one moment and not apply the next. By its application at the death of testator there is eliminated

from this case the question as to the manner in which her heirs would take if they had taken, because they did not take.

There is no more reason to interpret this will as making provision for two classes than there is to interpret it as making provision for three classes. Nothing in the will indicates that the testator intended to create two classes, viz., (1) his brothers and sisters and (2) whoever his wife's heirs should turn out to be. Nothing in the will indicates that he intended to create three classes, viz., (1) his brothers, (2) his sisters, and (3) whoever his wife's heirs should turn out to be.

To hold with the opinion it is necessary to ignore the punctuation of the will, the ordinary meaning in wills of the words "in equal parts" and "equally divided" and to arbitrarily read into the will an unexpressed intention of the testator.