Joan Elizabeth Dawson and Michael Stewart Burtle, Plaintiffs-Appellants, v. Ina Mae Yucus, Individually and as Executrix of the Last Will and Testament of Nelle G. Stewart, Deceased, and Hazel Degelow, Defendants-Appellees.

**Gen. No. 10,940.**

Fourth District.

July 29, 1968.

Denby & Dobbs, of Carlinville, and Achtenberg, Sandler & Balkin, of Kansas City, Missouri, for appellants.

Phelps, Russell and Boyle, of Carlinville, for appellees.

JONES, J.

In this will construction case plaintiffs seek a decree finding Clause Two of the will of Nelle G. Stewart, deceased, is a devise to a class. Plaintiffs appeal a trial court decree rendered for defendants.

Nelle G. Stewart, of Girard, Illinois, died on May 29, 1965, leaving a duly executed will dated March 3, 1959, and containing ten dispositive clauses. The first clause directed payment of debts and funeral expenses. The second clause, the interpretation of which is the sole issue in this case, provided:

> "Through the Will of my late husband, Dr. Frank A. Stewart, I received an undivided one-fifth (⅕) interest in two hundred sixty-one and thirty-eight hundredths (261.38) acres of farm lands located in Sections Twenty-eight (28), Twenty-nine (29), Thirty-two (32) and Thirty-three (33) in Township Fourteen (14) North, Range Four (4) West of the Third Principal Meridian in Sangamon County,

Illinois, and believing as I do that those farm lands should go back to my late husband's side of the house, I therefore give; devise and bequeath my one-fifth ($\frac{1}{5}$) interest in said farm lands as follows: One-half ($\frac{1}{2}$) of my interest therein to Stewart Wilson, a nephew, now living in Birmingham, Michigan and One-half ($\frac{1}{2}$) of my interest to Gene Burtle, a nephew, now living in Mission, Kansas."

Clauses three and four made bequests of personalty to Ina Mae Yucus, Lola Eades, Hazel Degelow and Ella Hickey. Clauses five, six and seven made bequests of cash to charities. Clause eight provided for the payment of a reasonable allowance to Ina Mae Yucus or Hazel Degelow should illness make it necessary for the testatrix to live in either of their homes. Clause nine directed the executrix to convert all "the rest, residue and remainder of my property . . . of whatever kind and character and wheresoever situate, including void or lapsed legacies . . . into cash . . . and the proceeds divided equally between Ina Mae Yucus and Hazel Degelow, or to the survivor or survivors of them, should any of said named persons predecease me." Clause ten appoints Ina Mae Yucus executrix and waives bond.

After the will was admitted to probate, Stewart Wilson filed suit to construe the will alleging that the devise in clause two was a class gift, that Gene Burtle, one of the devisees in clause two, died after the date of execution of the will but before the testatrix and that plaintiff, as the survivor of the class, was entitled to the entire one-fifth interest in the farm. After the complaint was filed, Stewart Wilson conveyed the interest he allegedly received as survivor of the class to the two children of the deceased Gene Burtle and they were substituted as plaintiffs. The defendants, the executrix and the beneficiaries named in the residuary clause of the will, filed answer denying that clause two was a gift to a class, asserting that it was a devise to two specific individuals and that

upon the death of Gene Burtle prior to that of the testatrix, the gift to him lapsed and passed into the residuary clause of the will.

At the trial the court found that the death of Gene Burtle prior to that of the testatrix created a latent ambiguity and admitted extrinsic evidence relating to testatrix' intentions. There is no serious dispute over the facts shown by the evidence presented by plaintiffs. Nelle G. Stewart was the widow of Dr. Frank A. Stewart and received as a devisee in his will a one-fifth interest in a 261-acre farm in Sangamon County. Nelle G. Stewart and Dr. Frank A. Stewart had no children. At the death of Dr. Stewart his surviving blood relatives were Gene Burtle, Stewart Wilson, William C. Stewart and Robert T. Stewart, his nephews and Patti S. Lusby, his niece. Nelle G. Stewart knew all of these relatives of Dr. Stewart. Of these relatives of Dr. Stewart, only Gene Burtle and Stewart Wilson had a close personal relationship with the testatrix. Gene Burtle died on May 15, 1963, and the testatrix knew of his death but made no changes in her previously executed will. There was evidence from four witnesses that in conversations had with testatrix she stated she wanted the one-fifth interest in the farm to go either to her husband's side of the house, or to Gene Burtle and Stewart Wilson because she felt especially close to them and none other of Dr. Stewart's relatives had any contact with her.

The trial court held, we think correctly, that clause two of testatrix' will did not create a class gift and that the gift in that clause to Gene Burtle lapsed and, pursuant to the Illinois Lapse Statute, chapter 3, section 49, IRS 1965, passed into the residue of her estate.

The definition of class gifts and pertinent rules of construction as followed by Illinois courts are set forth in the case of Strohm v. McMullen, 404 Ill 453, 89 NE2d 383:

■■■■■■■■■

"The definition of a class gift adopted by this court, as laid down by Mr. Jarman in his work on Wills, Vol 1, P 534, 5th Am Ed, is: 'A gift to a class is defined . . . as a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons.' Volunteers of America v. Peirce, 267 Ill 406, 108 NE 318; Blackstone v. Althouse, 278 Ill 481, 116 NE 154, LRA 1918B, 230; Henry v. Henry, 378 Ill 581, 39 NE2d 18.

" 'A class, in its ordinary acceptation, is a number or body of persons with common characteristics or in like circumstances, or having some common attribute, and, as applied to a devise, it is generally understood to mean a number of persons who stand in the same relation to each other or to the testator.' Blackstone v. Althouse, 278 Ill 481, 116 NE 154, 157, LRA 1918B, 230. And it has been definitely decided in this State that in determining whether a devise is to a class or to individuals depends upon the language of the will. If from such language it appears that the amounts of their shares are uncertain until the devise or bequest takes effect, the beneficiaries will generally be held to take as a class; but where at the time of making the gifts the number of beneficiaries is certain, and the share each is to receive is also certain, and in no way dependent for its amount upon the number who shall survive, it is not a gift to a class, but to the individuals. Volunteers of America v. Peirce, 267 Ill 406, 108 NE 318; Blackstone v. Althouse, 278 Ill 481, 116 NE 154, LRA 1918B; Strauss v. Strauss, 363 Ill 442, 2 NE2d 699, 105 ALR 1386; Henry v. Henry, 378 Ill 581, 39 NE2d 18; Peadro v. Peadro, 400 Ill 482, 81 NE2d 192.

105

"There is an exception to the rule that naming the individual prevents the gift from becoming a class gift, stated in Strauss v. Strauss, 363 Ill 442, 2 NE2d 699, 105 ALR 1386, holding that the mere fact that the testator mentions by name the individuals who make up the class is not conclusive, and that if the intention to give a right of *survivorship* is collected from the remaining provisions of the will, as applied to the existing facts, such an intention must prevail. This is in accord with the general rule applying to construction of wills, that the intention of the testator, if clearly manifested from the whole will, must prevail over rules of construction. This rule was recognized in the late case of Peadro v. Peadro, 400 Ill 482, 81 NE2d 192, 194, where the gift after a life estate was devised as follows: 'shall be equally divided, share and share alike, between Earl D. Peadro, Berniece F. Peadro, Roy F. Peadro and Irtys A. Peadro, or the survivor of them to be their sole and absolute property.' In that case we held there was no class gift, saying: 'This court recognizes the rule that a gift to persons named is a gift to them individually and not as a class, and will treat the gift as one to individuals, unless reasons are found in the language and structure of the will for deciding that the intent of the testator, which is, of course, paramount to the rule, would be best subserved by disregarding the rule and treating the gift as one to a class.' "

Also, see Restatement of Property, Future Interests, §§ 279, 280 and 281.

Admittedly the gift in clause two is not made with the usual generic class description such as "children," "brothers," "nephews," "cousins," "issues," "decedents," or "family" but is in fact to two named individuals, conditions which militate against construction of the clause as a class gift. However, plaintiffs argue that because of the

106

death of Gene Burtle prior to that of the testatrix a latent ambiguity exists and extrinsic evidence was properly received to show the true intention of the testatrix in clause two of her will, and that the phrase in clause two, "and believing as I do that these farmlands should go back to my husband's side of the house," together with the extrinsic evidence, clearly requires class gift construction.

██ ██ Plaintiffs rely largely upon the cases of Strauss v. Strauss, supra, and Krog v. Hafka, 413 Ill 290, 109 NE2d 213. The Strauss case, as quoted above, recognizes the general rule that naming of individuals prevents the gift from becoming a class gift, but holds that merely naming the individuals is not conclusive if the intention to give a right of survivorship is collected from the remaining provisions of the will and the existing facts. In the Krog case, which plaintiffs contend is on all fours with this case, one Frieda Studtmann left a will consisting of four paragraphs. The first paragraph directed payment of debts and funeral expenses; the second made a specific legacy to a church; and the third was as follows: "Third, I hereby give, devise and bequeath to Harry E. Hafka and his wife, Ethel May Hafka, of New Lenox, Illinois, all of my estate both real and personal of every kind and nature whatsoever to have and to hold the same to them and their heirs and assigns forever"; the last paragraph appointed Harry E. Hafka executor. Harry E. Hafka died eight months prior to the death of testatrix. Extrinsic evidence showed that testatrix, a spinster, spent the later part of her life residing on her 170-acre farm; that for approximately seven years prior to her death Harry Hafka and his wife Ethel May Hafka lived with her, operated the farm and furnished extensive care for testatrix, who was under the doctor's attention for four or five years with a goitre and heart ailment; that the testatrix did not care for her cousins (her only relatives); their paths crossed infrequently and she enter-

107

tained resentment toward them. Testatrix told witnesses she was not interested in leaving her estate to her relatives inasmuch as they had more money than she did; that at her request a nonlawyer friend, eighty years of age, prepared her will and she told him and the witnesses that she was living with the Hafkas, she liked them well, that it was her desire that everything should go to them, that they had agreed to take care of her until she died and to give her a decent burial. She also mentioned her relatives and stated she did not owe them anything, "they are not going to get any of my estate." Other evidence was that the testatrix told her personal physician that she wanted everything she had to go to the Hafkas for they had taken good care of her. The Supreme Court made an extensive review of the law of latent ambiguity and class gifts and concluded by reciting eight controlling factors that made the conclusion inescapable that Frieda Studtmann intended that all her property was to go to the Hafkas as a class, and that Ethel May Hafka, as the survivor of the class, took the entire residue of the estate.

We think, and hold, that this case is more nearly akin to Strohm v. McMullen, supra, and O'Connell v. Gaffney, 23 Ill2d 611, 179 NE2d 647. The will under consideration in Strohm contained a clause expressly excluding a sister and nephew from any benefits from the testator's estate. It then gave the residue of the estate to three named persons, share and share alike. Two of the three persons named in the residuary clause predeceased the testator, the third claimed the entire residue as the survivor of a class. The court rejected the class construction and held that:

> "The fact that the testator did not want certain relatives to share in his estate does not indicate that he desired the named residuary devisees be clothed with the right of survivorship.
>
> . . . . .

108

"The sixth clause of the will in this case not only named the individuals who were to take, but also who were to take 'share and share alike.' No more precise description of a donee, or of the amount to be given, could be made, leaving no room to construe the individuals into a class so that the survivor of such class would take all the residue."

The residuary clause of the will considered in the O'Connell case provided, ". . . I direct that one part be paid in equal shares, to my two brothers, James Gaffney and Edward Gaffney of Ireland." Edward died before the testator. The court held:

"Considering the fact that the instant will devises to two brothers of the testator, who are named, and that they are to take in equal shares, it seems clear that Owen Gaffney was thinking simply of his two brothers then living and not of a person or persons to be ascertained at a future time. In our opinion, nothing appears from the general plan of disposition, or from any special relationship of Owen Gaffney to his two brothers, or from the failure of Owen Gaffney to change his will after the death of Edward to overcome the initial presumption that the gift was to James and Edward as individuals. The gift to the two brothers in equal shares further strengthens this conclusion that a class gift was not intended by the testator."

In this case the testatrix named the individuals, Stewart Wilson and Gene Burtle, and gave them each a one-half portion of her interest in the farm, thus making certain the number of beneficiaries and the share each is to receive. The shares in no way depend upon the number who shall survive the death of the testatrix. There is nothing in the language of the will that indicates the testatrix intended to create a class or survivorship gift. The only other provision of the will, also contained in clause

109

two, that has any bearing on the question is the statement, ". . . believing as I do that those farm lands should go back to my late husband's side of the house. . . ." While it is true that this language recites testatrix' desire that the one-fifth interest in the farm go back to her husband's side of the house, it does not indicate a survivorship gift was intended. Her intention to return the farm to her husband's side of the house was fulfilled when she named Stewart Wilson and Gene Burtle as the donees of the interest. And we are not pursuaded that the extrinsic evidence offered by plaintiffs is sufficient to require a finding that the testatrix intended a class or survivorship gift as in the Strauss and Krog cases. There is no evidence which requires, or, in view of the Strohm and O'Connell cases, would even permit, construing this specific devise of equal one-half portions to two named individuals as a class gift.

Further emphasis for the result we have reached is supplied by other factors found in the will and extrinsic evidence. First, the testatrix created a survivorship gift of the residue of her estate in the ninth clause of her will, thus indicating she knew how to manifest an intent to create a class or survivorship gift; hence, the language of clause two, phrased differently, was intended to create a gift to individuals distributively. Restatement of Property, Future Interests, § 280, Comment g, No. 1. Paragraph No. 2 of the same Restatement citation provides, "The specification . . . of an exact proportion in the subject matter of the conveyance, which is to be received by each of the named and described persons, is strongly indicative of an intent to make a gift to individuals distributively whenever the . . . proportions so specified equals the entire subject matter given by the limitation in question." Secondly, the common characteristic of the alleged class described by plaintiffs is that of relation to Dr. Stewart, or, in the words of clause two, the class is of "my late husband's side of the house." However, this characteristic is also shared by three other heirs of Dr.

110

Stewart of the same degree of relationship to him as Stewart Wilson and Gene Burtle. It thus appears that Gene Burtle and Stewart Wilson do not constitute the alleged class but are individuals named from the class.

The factors that distinguish the Strauss case from this case were furnished by the Supreme Court in Strohm v. McMullen, supra, where they analyzed the Strauss case and found that the "mentioning of the names of children in the Strauss case was only one of four different ways in which the residuary legatees were designated, the others in themselves being sufficient to bring the donees within a class." Nor do we feel that the Krog case is "on all fours" with this one. In that case the language found to create a class gift was much different than that used in the instant will, and the testatrix enjoyed a much closer relationship with the Hafkas than that between Mrs. Stewart and Gene Burtle and Stewart Wilson. Extrinsic evidence shows that the "close personal relationship" consisted of friendly visits by the Burtles and Wilsons about every summer when they came from their homes in Michigan and Kansas to visit in Springfield and Girard. In Krog, the testatrix received many years of personal services from the Hafkas and stated upon several occasions that she did not want any of her heirs to have any of her property. Further, few of the controlling factors enumerated by the court in deciding that case are present here. For instance, the always present presumption that the testatrix intended not to die intestate as to any of her property was relied upon in the Krog case, but here no partial intestacy will result from the nonclass construction. Here there is a general testamentary scheme favoring the beneficiaries of the residue of Mrs. Stewart's estate; namely, Ina Mae Yucus and Hazel Degelow—persons with whom she was obviously on an intimate and friendly basis as shown by the fact that she left them the residue of her estate and, per clause eight of her will, contemplated living in either of their homes.

111

The devise in clause two was not to persons who come within the designation of a class but was to individuals distributively. It was not so made or limited to prevent the operation of the Illinois Lapse Statute which must be given its intended effect. The court below correctly held that upon the death of Gene Burtle prior to that of the testatrix the devise to him lapsed and passed under the residuary clause of the will. The Decree will be affirmed.

Affirmed.

CRAVEN, Acting P. J. and TRAPP, J., concur.